Eastern Dist.
*March*, 1832.

SKILLMAN
vs.
PURNELL ET ALS.

### SKILLMAN vs. PURNELL ET ALS.

PPEAL FROM THE COURT OF THE THIRD DISTRICT, THE JUDGE OF THE EIGHTH PRESIDING.

The right of third parties to oppose an execution, is limited to cases, where the person making the opposition is the owner of the thing, or has a privilege on it.

A commercial partnership is confined to personal property, and if real estate be acquired by the firm, it will be *joint* and not partnership property.

Partnership effects are first responsible for partnership debts.

During the existence of a commercial partnership, between the plaintiff and one Handy, there was purchased in the name of the firm two slaves, the interest in one-half of which, (or the interest of Handy) was sought to be sold, for the benefit of the defendants.

The sale was enjoined by the plaintiff, on the ground, that the interest of Handy, in the slaves, had been previously seized and sold, to satisfy his private debts, at which sale the plaintiff became the purchaser. On hearing, the injunction was dissolved, and the plaintiff appealed.

*Turner*, for appellant, contended:

That the right of Handy, to the slaves in contest, passed by the adjudication of the sheriff, to the plaintiff, and that, at all events, he had a right to the proceeds of the sale, to pay the partnership debts.

*Downs*, contra.

The plaintiff acquired no title to the slaves, by the purchase at sheriff's sale.

*Porter, J.* delivered the opinion of the court.

The plaintiff applied for, and obtained an injunction, against the execution of a writ of *fieri facias*, which the defendants had issued against the property of one Samuel Handy, and under which, they had seized two slaves.

The petition alleges three principal grounds for the injunction.

1. That the writ had illegally and irregularly issued.

2. That the petitioner and Handy, were partners in a commercial firm; that to facilitate them in their business, they purchased two slaves and others, that on executions which had issued against Handy, for his private debts, all Handy's interest in the firm, was seized and sold to the petitioner, by reason whereof, he has become the owner of these slaves, as making a part of the interest of Handy, in said firm.

3. That the partnership yet owes many and heavy debts, and that the petitioner has a privilege on the slaves, seized for the payment of these debts. Handy, individually, being insolvent, and there not being sufficient property belonging to the firm, to satisfy all the claims against it.

The defendants excepted to that part of the petition, which alleged informality in the mode the execution issued. The court sustained this exception, and the plaintiff took a bill of exceptions.

The court did not err. The Code of Practice, which gives the right to third parties to oppose an execution, limits that right to cases, where the person making the opposition, is the owner of the thing, or has a privilege on it. All other rights, if any such there be, which third parties may possess, must be exercised by an ordinary action. They furnish no ground for this mode of relief. *Code of Practice,* 396.

The right of third parties to oppose an execution is limited to cases where the person making the opposition, is the owner of the thing, or has a privilege on it.

This part of the petition being stricken out, the defendants filed an answer to the remainder.

They pleaded the general issue, and specially denied, that the plaintiff had acquired any title in the slaves, under the sale made of Handy's interest in the partnership. They also denied, that he had any right, as partner, to resist their execution.

A very voluminous record of the proceedings, growing out of these issues, is brought before us. The court below, after hearing the parties, gave judgment in favor of the defendants, and dissolved the injunction. The plaintiff appealed.

We think, the judge of the first instance, took a correct view of the legal rights of the parties. Our duty, however, requires us to set out the reasons, rather more fully than he did, in the opinion which he delivered, and which appears on record.

The plaintiff claims title in the slaves, as has been already stated, in virtue of an execution which issued against Handy, and under which, a sale was made to him by the sheriff, " of all the right, title, interest and claim, of Samuel Handy, in and to the commercial or partnership concern, of Handy & Skillman, &c." This sale was made for the sum of one thousand dollars, which from evidence on record, the plaintiff appears to have paid.

A bill of sale is shown, by which it appears, that four slaves, of which the two now seized form a part, were " sold and delivered to Handy & Skillman."

It is contended, these slaves made a part of the property of the commercial firm of Handy & Skillman, and as such, passed to the plaintiff, by the sheriff's conveyance, of all Handy's interest in the partnership.

By the 2796th article of the Louisiana Code, " commercial partnerships are such as are formed :

1. For the purchase of *any personal property*, and the sale thereof, either in the same state, or changed by manufacture:

2. For buying and selling *any personal property* whatever, as factors or brokers :

3. For carrying *personal property* for hire, in ships or other vessels."

It is clear, from these enactments, that a partnership to buy and sell slaves, would not be a commercial partnership. It cannot escape notice, on reading the provisions, just cited, how carefully the legislature, in each clause, confine such an association to things personal, and how strong the implication is, they intended to exclude those things, which were immoveable by their nature, by their destination, or by the operation of law.

But it was contended, that although they might not be properly objects, in regard to which a commercial partnership could be formed, they might become the property of the firm

for other purposes; particularly for the purpose of enabling the partnership, to carry on, more easily, its mercantile transactions. They were assimilated to a house or lot, which the partnership acquires, to enable it the better to conduct its business.

If the purchase of slaves or real estate, were not only convenient, but indispensable, to carry on the commercial partnership, there would be great strength in the argument, that the law allowed such things to become partnership property. For where the law gives the end, it grants the means. But in our view, it is by no means essential, that either land or slaves, should be acquired by the firm, to enable it to have the enjoyment or use of them. If either or both are required to facilitate their business, they may purchase them, and with any funds they choose, but as the law confines their partnership to personal property, they will be joint owners, not partners.

*A commercial partnership is confined to personal property; and if real estate be acquired by the firm, it will be: joint and not partnership property.*

This view of the subject will become more clear, by again recurring to the definition in our code, of a commercial partnership. It is there stated, to be for the buying and selling of personal property, in the right of the firm, or buying and selling personal property as agents, or carrying personal property for hire. The purchase of slaves or houses, to enable the firm the more conveniently to do these things, comes within no one branch of this difinition, and consequently, is not an act which can be done by a commercial partnership. If land or slaves could become partnership property, where the firm was mercantile, it would follow, that they must be governed by commercial law. The Code of Commerce in France, does not like ours, limit in express terms, commercial partnership to personal property, but notwithstanding the greater latitude of its definition, it is considered in that country, such an association can only act on things which are moveable. *Code Commerce, Note by Paillett, Manuel Droit Français.*

This opinion disposes of the other point, in relation to the privilege claimed by the plaintiff, on this property. It is only partnership effects, which are first responsible for partnership

*Partnership effects are first responsible for partnership debts.*

EASTERN DIST.
March, 1832.

debts. It also dispenses with the necessity of acting on the bills of exceptions, for was every thing proved, which they assume, our judgment must be the same on the merits.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.