Calder & Co. et al. vs. Creditors.

## No. 11,548.

### JOHN CALDER & CO. AND D. R. CALDER VS. THEIR CREDITORS.

#### MOTION TO DISMISS THE APPEAL.

The grounds are:

Defectiveness and insufficiency of the clerk's certificate.

Diminution of the record of appeal.

#### CLERK'S CERTIFICATE.

An agreement had been made to bring up books in the original.

The clerk's certificate regarding these books was controlled by the agreement.

#### DIMINUTION OF RECORD.

Original documents not stamped were brought up by the clerk of a court in answer to the writ of *certiorari* issued to him to complete the record. They were brought up by him in the original and not stamped.

As it occasions no delay and the law may be complied with (the case has not been called), time is allowed to affix needful stamps to the instruments of evidence.

Motion to dismiss not allowed.

#### ON THE MERITS.

Entries in partnership books bind the partners, and on the issue whether immovable property has been acquired for the partnership, such entries are admissible. 2 Lindsley on Partnership, 537; Armistead and another vs. Spring, 1 Rob. 567.

Whether the immovable is bought in the partnership name, or for it by one of the partners, they become joint owners, as the partnership can not own immovable property. C. C., Arts. 2825, 2836; 1 N. S. 295; 3 La. 496; 10 La. 420; 3 Rob. 256; 1 An. 434; 5 An. 532.

Hence, being joint owners, one partner can not dispose of the shares of his copartner in such immovable; all must concur to make title, and hence a cession by one partner does not pass to the syndic the shares of his copartner in immovable property. *Ibid.*; 1 An. 434; 4 An. 56; 9 Rob. 372.

But if the immovable is acquired for the partnership, each partner has the right in the appropriate proceeding to insist the property shall be applied to pay partnership debts, and, in the event of a cession by one of the partners, that right passes to the syndic. Story on Partnership, Secs. 97, 98, 360, 361; Civil Code, Art. 2823. Case vs. Beauregard, 99 U. S. 128.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Horace E. Upton* and *Henry L. Lazarus* for Syndics, Appellees.

*Frank L. Richardson* and *Suthon & Suthon* for Peter Berger et als., Defendants in Rule, Appellants.

### ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

BREAUX, J.   From a judgment dismissing their demand, Peter Berger, Executor, *et al.* and Mrs. Emily P. Shields and her husband, William Shields, have taken a devolutive appeal.

The syndics of John Calder & Co. and D. R. Calder individually, defendants and appellees, have moved to dismiss the appeal on the grounds:

That the clerk's certificate, made according to instructions of appellant, is defective and insufficient.

That material and important evidence for the defendant was not copied in the transcript.

That the ledgers 6 and 4 of John Calder & Co. have not been filed in original in this court.

After the motion to dismiss had been filed the appellant applied for a writ of *certiorari* to the clerk of the court to certify up the whole record in the case.

The clerk tendered his answer, alleging that he has complied with the order.

In the event of an appeal an agreement was entered of record in the court *a qua* that the ledgers were to be brought up in the original.

The certificate required was properly made to yield to the agreement, for the clerk could not certify the books brought up in the original.

The appellants have, through counsel under oath, stated the causes that prevented them from producing and lodging the books in the Appellate Court.

The books and documents are at this time before the court under a *certiorari* from this court.

" When by subsequent order of court imperfections in a transcript are cured, a pending motion to dismiss will be overruled as a matter of course." Huyghe vs. Brinkman, 38 An. 837; Hughes vs. Murdock, 45 An. 935.

With reference to the documents not copied in the transcript, being schedules or lists of property.

The defendants (although they were brought up by the clerk of court as part of the record in answer to the writ of *certiorari*) urged

that it was proper on the part of the clerk not to include them in the transcript. They allege that while offered, the introduction, filing and stamping is lacking. The record discloses that the following question was propounded:

" Will you examine this paper numbered 35,056, filed February 15, 1892, in case entitled John Calder & Co. and David R. Calder vs. Their Creditors, and state what this purports to be?"

To this question appellants objected. The court overruled the objection and admitted the document, to which ruling a bill of exception was reserved. Following this rule counsel for appellees offered "the schedule in the respite proceedings identified by the witness, and the schedule in the insolvency proceedings, which he has just identified, said documents being filed in suits Nos. 32,894 and 35,056.

The same objection was made as was offered to the admissibility of the documents just previously offered.

The ruling was the same and a bill was reserved.

The documents, the clerk's statement of facts shows, were introduced and admitted in evidence.

They were as alleged not stamped.

. Though they, the appellees and defendants, should have had them stamped when they were offered; considering all the facts and circumstances in this case the court will permit the stamping at this time, as it will complete the record and as it does not occasion any delay in the hearing of the case on appeal.

The case has not been submitted for decision. But the time within which appellees are authorized to stamp the documents is limited to three days from this date, otherwise they will not be considered as instruments of evidence before the court. W. S. Reddick vs. R. M. White, 46 An. 1198.

Appellees' motion to dismiss the appeal is denied.

## ON THE MERITS.

MILLER, J. The executors and heirs of John Calder by their petition, filed in these proceedings, assert title to immovable property, charged to have been wrongfully included in the cession of David R. Calder to his creditors, and those of the firm of John Calder & Co. The syndics of the creditors, answering, aver the property, though bought in the name of John Calder, was purchased with the funds of

the partnership of John Calder & Co., as such carried on their commercial books and belonged to the partnership. The judgment of the lower court was in favor of the syndics and comes here on the plaintiffs' appeal. John Calder & Co., at and prior to 1876, was composed of John H. Calder, John Calder and David R. Calder, their respective interests being one-quarter, one-half and one-quarter. The partnership was renewed in 1880 to endure for five years, the interest of the partners remaining the same. John H. Calder died in 1884, before the expiration of the five years. The partnership was continued between the survivors, the interest of each being fixed at one-half each. This partnership was ended by the death of John Calder in 1885. D. R. Calder continued the business under the same firm name.

Prior to the partnership formed in 1880, there was acquired in 1876 certain property on Peters street used by the firm, purchased in the name of John Calder. In 1881 there was acquired certain property on Magazine street, and in 1883 the Bayou Sale plantation in St. Mary. These last purchases, like the first, were in the name of John Calder. The property embraced in these three purchases is that sued for by his executors and heirs.

David R. Calder in 1891 applied for a respite from the creditors of John Calder & Co. and his individual creditors. The respite was obtained, but proving of no service, in 1892 he made a cession to his creditors, as well as to the creditors of his late firm, John Calder & Co. In the respite and cession he included the immovable property involved in this suit, treating it as firm property, though acquired in the name of John Calder.

The plaintiffs rely on the title standing in the name of John Calder, and contend this title is conclusive. The defendants insist that the entries in the partnership books, and other testimony tending to show that the property was treated by the partners as firm property, was properly admitted, and establish the ownership of the firm.

We are met at the threshold of the case with the objection of the plaintiffs to the admissibility of the entries in the partnership books, and other testimony offered by defendants on the issue of title. The objection is based on the provisions of the Code that the authentic act conveying title makes full proof, and prohibiting parol testimony tending to contradict the act or to establish or affect the

title to immovable property. Entries in the partnership books bind the partners; their admissibility can not be deemed to infringe on the dignity the law attaches to the authentic act, and manifestly are not to be viewed as parol proof. We therefore hold the entries admissible. In the same view, the declarations of the partners contained in the act of partnership of 1880, with respect to the Peters street property, must have effect. For the purposes of our conclusion as to the title of the property, the objection under consideration needs no further discussion. 2 Lindley on Partnership, 537; Armistead vs. Spring, 1 Rob. 567.

With respect to the Peters street property acquired in 1876 by John Calder, the entries in the ledgers are headed Warehouse, 99 Peters street, with a debit of two thousand five hundred and fifteen dollars and seventy-one cents. It is in proof the firm used the property. The price paid for it was two thousand dollars. But, in addition to the significance of these entries, there is in evidence the partnership agreement of 1880, accompanied with a statement of all the partnership property, in which the Peters street property is included, at the value corresponding with the debit in the ledgers. The agreement is by authentic act; refers to the partnership previously subsisting between the parties, John Calder, John H. Calder and David R. Calder, and is signed by them. The interests in this previous partnership was one-half in John and one-fourth each in John H. and David R. Calder. It is to be added that on the inventories of the estate of John H., 99 Peters street is mentioned as firm property, and not included in that of John. There can be but one conclusion: that, though standing in John Calder's name, the warehouse was firm property, i. e., acquired for it.

The evidence with regard to the Bayou Sale plantation is: that the firm held mortgage notes on the property; that John Calder purchased it in 1883, making a cash payment of five thousand dollars, and for the residue of the price assumed the notes held by his firm. Thereafter, an account was kept on the partnership books headed Bayou Sale plantation, beginning with a debit of the mortgage notes assumed by John Calder. This account is continued with debits apparently for plantation supplies and expenditures; carries no credits except a small item and closes with a large balance against the plantation. In the applications for a respite and for a surrender by David R. Calder, he included this plantation as firm

property.   These applications were the first, more than five, and the last more than seven years after John Calder's death.   We find in the record the testimony that the firm paid taxes on the property, and, subject to plaintiff's objection, there is testimony as to the appreciation of the title manifested by the acts and conduct of the partners.   This testimony adds but little if any to the light afforded by the written title and the entries.   In the book-keeper's testimony occurs the statements substantially: that the firm paid taxes, insurance and other expenses of the plantation not charged to the account of John Calder but to the plantation; that the plantation figures as a debtor to the firm; does not know whether it can be called an asset; that nothing he thinks, on the books indicates the plantation was the property of John Calder, and the witness states, he could not state how the property was treated by the members of the firm; that the question never came up until the inventory of John H. Calder, and with that witness had nothing to do.   On the same line witness testifies on cross-examination: had heard John Calder claim the plantation as his; he always so considered it; that goods were always shipped to John Calder for Bayou Sale plantation, and he makes other statements carrying that significance.   D. R. Calder, though he twice placed the plantation on his schedules as firm property, yet testifies the plantation was that of John Calder, and was so treated, and it is proper to add the witness states, in substance, he was troubled in mind and gave the schedules little attention.   It is quite manifest the parol proof, if entitled to any consideration on an issue of title to immovable property, is not of a character to exert any material influence.   It seems to us, it would be straining the significance of the entries to hold they show this property was acquired for the firm.   The account was kept in the name of the plantation, just as any other account might be kept of the firm with plantation owners.   The mortgage notes were debited, the supplies and other expenditures were charged, and we gather from the testimony there were practically no revenues to be credited.   One partner may well acquire during the existence of the partnership, separate property.   Here, John Calder made a large cash payment and there is no proof it was made with partnership funds.   He assumed the payment of the mortgage notes, thus becoming a debtor to the firm, and accordingly the plantation account was charged

with the notes.   Where partnership entries are relied on to overthrow the title of the partner to immovable property acquired by him, the entries should clearly import the acquisition was for the partnership. We think the proof is short of that requirement, and that the relation shown by the record is that John Calder was the owner of the property, and the debtor of his firm on the plantation account.   That debt and not the plantation was the asset of the firm.

The Magazine street property was acquired in 1881 in the name of John Calder.   There is the testimony the firm paid the taxes; that they were not charged to John Calder's individual account; that the taxes figure in the expense account.   The witness, asked to refer to the entries, answers, the firm paid no taxes for five or six years, and that the firm paid the taxes when they were paid.   Whether any taxes were paid or charges for their payment were made in John Calder's lifetime does not appear.   The property was, at all times after his death in 1885, in the control of D. R. Calder.   No entry on the partnership books is produced with reference to this property.   It appears that on the inventory of John Calder's succession, this property was not included.   The inventory was taken under the direction of D. R. Calder alone, one of the executors, and was not signed by the co-executor, the widow of John Calder.   It must be manifest, the record discloses no basis whatever to hold the Magazine property to be that of the partnership.   We have detailed the parol proof, not to give it the character of testimony admissible to affect the legal title, but to show the slender basis it would afford if admissible.   In our view the title of John Calder must stand.

It appears that the widow of John Calder, one of the plaintiffs in this suit, in her capacity of his executor, signed the application of David R. Calder for a respite, and his schedule embraced as firm property all the immovable property standing in the name of John Calder.   Her testimony is she was told by David R. Calder it was her interest to do so, and we gather from her testimony she had no appreciation that her signature implied any liability or relinquishing any right.   In our view, her action has no bearing on the issue here.   As to the schedules of David R. Calder, filed years after the death of John Calder, they can have no tendency to affect the widow and heirs.

The Peters street property, under the evidence shown to have been acquired during the partnership of John Calder & Co., first

subsisting ending in 1880, it remains to consider the effect of that acquisition and the control the syndics of David R. Calder can exert with respect to that property.   Under our law a partnership can not own immovable property.   When acquired in the partnership name, or when by competent proof it is shown to have been purchased in the name of one of the partners for the partnership, they become joint owners.   The interest of the partners in that partnership was, as already stated, one-half in John Calder and one-quarter each to John H. and David R. Calder.   The result is that they became the owners in these proportions of that property.   It follows, too, that no one of these partners could convey more than his interest.   All must concur to sell the property, and no cession of one of the partners could have any effect on the shares of his copartners.   It is our conclusion, therefore, that the cession of David R. Calder was without effect on the one-half interest of John Calder.   Neither D. R. Calder or his syndic could pass any title to that half.   The syndic by the cession can control and dispose of the one-fourth only of the Peters street property.   C. C., Arts. 2825, 2836; Richardson vs. Packwood, 1 N. S. 295; Skillman vs. Purnell, 3 La. 496; Baca vs. Ramos, 10 La. 420; Thomas vs. Scott, 3 Rob. 256; Lee vs. Ferguson, 5 An. 552; Weld vs. Peters, 1 An. 434.

In equity, real estate acquired for the partnership is liable for the partnership debts.   This principle has no place in the discussion as to the effect of the cession.   That cession made by the partner in a commercial partnership passes the property of the partner, and the better opinion would seem to be, it passes the movable property of the partnership when made by the partner to pay partnership debts. Tyler and another vs. Their Creditors, 9 Rob. 372.   But under our law, immovables bought for the partnership must be deemed owned jointly by the individual partners, and can not be regarded as owned by the partnership.   Still, the partners have the right to require the application of such immovables to pay the partnership debts.   That equity does not spring from the cession.   With or without the cession it exists.   It is not a lien of partnership creditors in their own right, but a lien in their favor through the equity of the partners.   The partnership during which the Peters street property was acquired ended in 1880, fourteen years since.   David R. Calder can not hold the half interest of John Calder for debts created since that dissolution in the course of business conducted

by the survivors under the name of a firm dissolved years since. But if any debts of the partnership prior to 1880 still subsist, it is equitable that the right of the syndic be reserved in the appropriate form of proceeding to subject the Peters street property to satisfaction for such debts. Story on Partnership, Secs. 97, 98, 360, 361; C. C., Art. 2823; Case vs. Beauregard, 99 U. S. 126; McKee vs. Griffin, 23 An. 417. .

It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed; that the plaintiffs in this suit be and they are hereby recognized and decreed to be the owners of one undivided half of the property No. 99 Peters street, as the same is set forth in the petition, and act referred to in the petition, reserving the right of the syndic to subject said property to the satisfaction of the debts, if any, of the partnership of John Calder & Co., subsisting prior to 1880. It is further ordered and decreed that plaintiffs be and they are hereby decreed to be the owners of the Magazine street property and Bayou Sale plantation, as the same are set forth in the petition and acts of sale, and be put in possession thereof, and that defendants pay costs.

Rehearing refused.