(45 South. 951.)

No. 16,940.

STATE v. HOFFMAN.

(Feb. 17, 1908.   Rehearing Denied March 16, 1908.)

1. INDICTMENT AND INFORMATION — MATTERS TO BE PROVED—ALLEGATION OF PRESCRIPTION.

The allegation that prescription has been interrupted by the filing of an indictment is affirmative in character, and must be proved like any other affirmative allegation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, §§ 527–531.]

2. BANKS AND BANKING — CRIMINAL RESPONSIBILITY — RECEIVING DEPOSITS WITH KNOWLEDGE OF INSOLVENCY.

Act No. 108 of 1884, p. 144, making it a crime for any officer of a banking institution to assent to the reception of deposits after he knows that the bank is insolvent, does not require that the officer should have charter authority for assenting to the deposit, but simply that he shall be an officer and shall assent; hence, in the prosecution of the cashier of a bank under said act, the question is not as to who, under the charter, had authority or was charged with duty in the premises, but simply whether or not, as a matter of fact, the defendant was cashier, and as such assented to the deposit; and, as a consequence, proof that the cashier in point of fact had the active management of the bank and assented to the deposit is admissible, regardless of what may have been the charter requirements, and such proof is in no wise contradictory of the charter confiding the management of the bank to the board of directors, such charter provision can only be evidence of what should have been, and not for what actually was.

3. SAME—QUESTION FOR JURY—SOLVENCY OF BANK.

In such a prosecution, any estimate the State Examiner of State Banks may have made of the value of the assets of the bank is not conclusive upon the question of the solvency or insolvency of the bank, which is a question of fact to be determined by the jury and not by the Bank Examiner.

4. SAME—EVIDENCE—ADMISSIBILITY.

Upon the question of the probable value of the assets of the bank on the day the deposits were received, the subsequent history of the assets, showing what efforts were made by the liquidating commissioners of the bank to realize upon them and with what success, is relevant circumstantial evidence.

5. EVIDENCE—EXPERTS—BOOKS OF BANK.

For laying before the jury the condition of the affairs of the bank, in such a prosecution, the books of the bank are primary evidence, and experts may be called in to explain them so that they may be intelligible to the jury.

6. BANKS AND BANKING—CRIMINAL RESPONSIBILITY OF OFFICERS.

While, in such a prosecution, the books are evidence to show the condition of the bank, they are not such for fastening upon the defendant knowledge of such condition, unless accompanied by proof that they were kept under his direction and supervision.

7. CRIMINAL LAW — TRIAL — REMARKS OF COURT—COMMENT ON EVIDENCE.

The situation being that the entries made prior to a certain date were admissible against defendant, while those made subsequently were not, the judge, in ruling upon the admissibility vel non of the entries, had necessarily to decide whether they had been made before or after the date in question; hence his stating before the jury, in the course of such ruling, that certain entries had been made before the date in question, was not an objectionable expression of opinion upon the facts.

8. BANKS AND BANKING — CRIMINAL RESPONSIBILITY — RECEIVING DEPOSITS WITH KNOWLEDGE OF INSOLVENCY — EVIDENCE — ADMISSIBILITY.

The defendant's bank not having availed itself of the custom of banks, in cases of stringency, to limit the amount which a customer may draw each day, proof of such custom was irrelevant.

9. SAME.

Proof that three years after the failure of defendant's bank nearly all the banks of the state had had recourse to this mild form of suspension of payments was irrelevant; for the reason that conditions prevailing three years later were no test of conditions prevailing at the time.

10. CRIMINAL LAW—DOCUMENTARY EVIDENCE —LETTERS.

The fact that memoranda in red ink have been made in manuscript on the margin of a typewritten letter does not render the letter inadmissible, when it is not proposed to offer the memoranda in evidence, nor to read them to the jury.

11. SAME — CUSTODY, CONDUCT, AND DELIBERATIONS OF JURY—MISCONDUCT IN PRESENCE OF.

The statements made by a bystander in the hearing of the jury that it was the defendant who had signed a certain note cannot possibly have caused any injury to the defendant, in view of the fact that the truth of the statement was subsequently verified on the trial, and all question in that regard put at rest by the production of the note.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1460.]

12. JURY — DISCHARGE OF JURY PENDING TRIAL.

Though the jury have been allowed to separate, the publication of comments upon the case by a local newspaper during the trial will not be ground for discharging the jury, in the absence of proof that the jurors, or some of them, actually read the comments, and were so impressed thereby as to be disqualified from further service on the jury.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

John H. Hoffman was convicted of a violation of Act 108, p. 144 of 1884, making it a crime for any officer of a bank to receive a deposit after he knows that the bank is insolvent, and he appeals. Affirmed.

Jerry Dee Cline, Paul Ambrose Sompayrac, Absolom Russell Mitchell, and Shelby Napoleon Young, for appellant. Walter Guion, Atty. Gen., and Leland Hugh Moss, Dist. Atty. (Lewis Guion, of counsel), for the State.

PROVOSTY, J. Act No. 108 of 1884, p. 144, reads:

"That it shall be a crime for any president, director, manager, cashier, or other officer, or owner of any private or public bank or banking institution in the state, to assent to the reception of any deposit, or the creation of any debt by such banking institution, after he shall have had knowledge of the fact that it is insolvent, or in failing circumstances."

Defendant was the cashier of the Citizens' Bank of Jennings, La. The bank received deposits on the 18th of February, 1905, and the next morning at 9 o'clock closed its doors. The grand jury indicted defendant under the above-mentioned statute. Question having arisen as to the regularity of the impaneling of the grand jury, the district attorney nolle prosequied the indictment, and renewed the same charge in an information. Defendant was convicted and sentenced to five years in the penitentiary, and prosecutes the present appeal.

Section 986, Rev. St., provides that "no person shall be prosecuted for any offense, murder, arson, robbery, forgery and counterfeiting excepted, unless the indictment or presentment for the same be found or exhibited within one year next after the offense shall have been made known to a public officer having the power to direct a public prosecution."

By provision of Act No. 73, of 1898, p. 96, when an indictment has been found within the year, but has been set aside by nolle prosequi, or otherwise, the year here mentioned must be computed from the day of the setting aside of the indictment.

The information was filed more than one year after the bank had closed its doors; hence, in order to show that the defendant was liable to prosecution, it became necessary to allege that an indictment had been found and that it had not been set aside until within less than a year before the filing of the information; and an allegation to that effect was accordingly made in the information. For proving this allegation the state offered the indictment in evidence, together with the minutes of the court showing its finding and its nolle prosequi.

Defendant objected to the evidence, on the ground that, prescription not having been pleaded, there was no issue before the jury to which the evidence was relevant; and that, moreover, "the state having negatived prescription was not called upon to prove its interruption."

The evidence is said to have been injurious as having put before the jury the opinion of the grand jury as to the guilt of defendant, and to have been all the more injurious from the fact that the foreman of the grand jury was the employer of two of the jurymen trying the case, who, naturally, would be influenced in such a matter by the opinion of their employer.

We think the evidence was relevant. The defendant does not have to plead prescrip-

tion in order that the state should have to prove the finding of an indictment within the year. The statute provides that "no person shall be prosecuted unless the indictment is found within one year." It follows from this that, unless the state proves that an indictment was found within one year, the state does not prove anything against the defendant for which he can be prosecuted. So true is this, that without such an allegation in the indictment no crime is shown, and a motion in arrest of judgment is good. State v. Foley, 113 La. 206, 36 South. 940; State v. Pierre, 49 La. Ann. 1159, 22 South. 373; State v. Joseph, 40 La. Ann. 5, 3 South. 405; State v. Victor, 36 La. Ann. 978, etc. It stands to reason that matter which must be alleged in order that a crime should be alleged must be proved in order that a crime should be proved.

The contention that "the state having negatived the prescription was not called upon to prove its interruption" is based on the assumption that the allegation of an indictment having been found within the year is an allegation negative in character, and as such not needing to be proved or even "not susceptible of proof." State v. Barfield, 36 La. Ann. 90. But such is not the case. Such an allegation is affirmative, and provable by the evidence in question; and therefore necessary to be proved.

The issues on the trial were as to the insolvency of the bank on the day the deposits in question were received; and as to whether, in case the bank was insolvent, defendant knew it; and, finally, as to whether defendant assented to the deposits. On the two latter issues, the state offered to prove that defendant had had the active management of the affairs of the bank. This evidence was objected to on the grounds, first, that the charter was the best evidence on that point; and, second, that the state, having offered in evidence the charter which showed that the

affairs of the bank were in charge of the board of directors, was precluded from offering evidence to the contrary.

The question of who had had the active management of the affairs of the bank was one purely of fact; and one upon which the charter was not only not the best evidence, but no evidence at all. The charter could only show who should have had the management; not who actually had it.

The charter has absolutely nothing to do with the question of whether defendant had or had not knowledge of the insolvency of the bank. And it could have had a bearing on the question of whether defendant assented, or not, to the deposits, only if the statute under which defendant is being prosecuted had required that he should have charter authority for so assenting. But it does not so require; it aims solely at protecting the public, and takes no account whatever of whether the officer assenting to the deposit had charter authority for so doing or not.

A few days after the bank had closed its doors, the State Examiner of State Banks, Mr. L. E. Thomas, assisted by two stockholders of his selection, made an estimate of the assets and liabilities of the bank. On the face of this estimate, the bank was solvent. The trial took place in December, 1907—three years, less one month, later.

One contention of defendant was that the estimate thus made by the Bank Examiner was the test provided by the Banking Act, Act No. 179 of 1902, p. 334, of the solvency or insolvency of a bank, and that none other was admissible.

We do not agree with that view. The banking act does not so provide, and was not intended to have anything to do with the operation of the statute under which the defendant is being prosecuted. The said estimate is required to be made merely for the guidance of the State Auditor. The test provided by the banking act, if, indeed, any can

be said to be provided by it for a case of this kind, is:

"When the cash value of the bank's assets shall be insufficient at a reasonable valuation to meet its obligations."

No doubt defendant was not guilty if by a reasonable estimate of the assets the bank was solvent; but it was for the jury, and not for the Bank Examiner and his two assistants, to make this estimate. To hold otherwise would be to hold that no matter how insolvent a bank might be to the knowledge of the cashier, this officer would be protected from prosecution for continuing to receive deposits if only the Bank Examiner make an estimate showing the bank to be solvent. In other words, the power would lie in the hands of the Bank Examiner and his two assistants to nullify the criminal statute sought to be enforced in this case.

On some of the assets the amount eventually realized was greater than the estimate of the Bank Examiner, and on others less. Proof of what was, in fact, realized on the assets was objected to by defendant, on the ground that the value of the assets was to be judged as of the day of the deposits, and not as of a later time, when, from one cause or another, they may have shrunk in value.

As a matter of course, the value of the assets was to be judged of as of the day of the deposits; but the value which they eventually proved to have was admissible as circumstantial evidence going to show what value they probably had on the day of the deposits; subject, of course, to the right of defendant to show that a shrinkage in value had taken place subsequent to the date of the deposits.

For investigating the condition of the bank, with a view to ascertaining its solvency or insolvency, the books of the bank had necessarily to be resorted to. Unfortunately, however, the liquidating commissioners had used the same set of books in the course of the liquidation, and had made new entries in them, so that they were not in the same condition on the day of the trial as at the date of the closing of the doors of the bank; and this caused a great deal of embarrassment on the trial, as it was considered that all entries made while the books were under supervision and control of defendant spoke for themselves, and were primary evidence; whereas those made subsequently were not of that character. This difficulty was sought to be obviated by identifying the entries made before, and those made after, the closing of the bank, and offering and reading to the jury, and taking into consideration, only the former; and by the judge instructing the jury in every instance that the entries made after defendant had lost control of the books were not to be considered as evidence. Notwithstanding these precautions, the use sought to be made of the books by the prosecution in the course of the trial led to a great many objections.

In ruling on one of these objections the court stated that the entry offered in evidence, and as to which the witness on the stand was testifying, had been made prior to the closing of the bank. This was complained of by defendant as being an expression of opinion by the judge on the facts, and a motion was made to discharge the jury. The judge explains, and we agree with him, that this expression of opinion on the facts was nothing more than what inevitably takes place in the course of a trial, in ruling upon the admissibility of evidence. Whenever a predicate is necessary to be laid for the introduction of evidence, the judge must decide whether such predicate has been laid or not, and, in doing so, must necessarily express an opinion on the facts. So, in this case, the evidence in question was admissible or not, and the objection made to it was good or not, accordingly as the entries in question had been made before or after the closing of the bank; and the judge, in expressing the opinion that they had been made before, did

nothing more than what he necessarily had to do in ruling.

Defendant offered to prove that at the time of the trial a large percentage of the banks of the state had placed a limit upon the amount which a depositor might draw each day. The state objected to the evidence, on the ground that conditions prevailing three years after the time of the commission of the offense were no test of conditions prevailing at the time of the commission of the offense.

In offering the evidence, counsel stated that it was offered "for showing a custom and rule with reference to the banking institutions of the state of Louisiana to protect the value of their securities from the evil effects of a run."

For the purpose for which it was thus said to be offered, the evidence was irrelevant. Proof of such a custom could only have been relevant if the defendant's bank had been shown to have followed it, and the fact of its having done so was being urged as an indication of insolvency. Proof of the fact that banks unquestionably solvent were in the habit at certain times of doing the same thing would then have been relevant. But the defendant's bank did not follow that custom, but simply closed its doors; and therefore proof of the existence of that custom was no more relevant than would have been proof of the existence of the thousand and one other banking customs as to which there was no question in the case.

The learned district attorney seems to have understood that the evidence was being offered for a different purpose, namely, to prove, not the custom of banks to adopt at times this mild form of suspension of payments, but the fact that most, if not all, of the banks of the state had recently done so; and this with a view to support the contention of defendant that the eventual insolvency of his bank was due to the same conditions which caused all the banks of the state to suspend payments. So understand-

ing, the district attorney put his objection in the form recorded above, namely, that conditions prevailing now were no test of conditions prevailing three years back—a proposition as to which we do not think there can be any question.

A witness who had written a letter to the defendant's bank, being upon the stand, and having identified his letter, which letter the defendant's bank was shown to have received, the state offered the letter in evidence; and defendant objected, on the ground that memoranda in red ink had been made on the margin of the letter, and that these memoranda being inadmissible, the letter also was inadmissible. The letter was typewritten and the memoranda were in manuscript and in red ink, and it was not proposed to offer the memoranda in evidence or to read them to the jury. The further objection was made that the reception of the letter by defendant's bank was not shown to have been brought to the knowledge of defendant. The latter objection, repeated at every step in the trial, is answered by the proof which was made on the trial that defendant was in control of the bank, and was familiar with all its business. The judge says that he "repeatedly instructed the jury that no entry in the books or writing of any nature whatsoever of which they did not find the accused had knowledge and approved could be considered against him."

The court took a recess while a witness was being examined concerning a certain note not then yet produced, the question being whether the name of a Mr. Desiré Hébert was or not affixed to the note; and the witness promised to produce the note after recess. It is said in the bill of exceptions that Mr. Hébert is one of the most prominent citizens of the parish, and is a man of venerable appearance, and had been "exhibiting all through the trial of this case great interest in securing the conviction of defendant." Whether the jury knew of this mental at-

titude of Mr. Hébert, is not stated; except that it is said that he had testified as a witness for the state on the trial. As soon as recess was announced, Mr. Hébert, the jury being yet present, arose, and, calling to one of the counsel for defendant, and pointing to the defendant, said, "Here is the man who signed the note." It is added that Mr. Hébert continued to "make remarks"; but what the "remarks" were is not stated. It is said that Mr. Hébert, while on the witness stand, had not denied his signature to the note, and had not charged defendant with having forged his signature to the note; but it is added that he had not been interrogated in that regard. For all that appears by the bill, the testimony of Mr. Hébert may not have had any reference whatever to the note. The judge adds to the bill that he does not believe Mr. Hébert "intended in any wise to influence the jury. He was laughing at the time." After recess the note was produced and was found to have but the one signature: "Pelican Rice Mill Co. By J. H. Hoffman, Sec. & Treas." This showed that the statement made by Hébert was literally true. Thereafter, no question could be, or was, raised in that connection on the trial. Under these circumstances, we fail entirely to see how defendant could have suffered any injury by the incident. Hébert merely stated a fact which the note proved to be true, and which after the production of the note was no longer contested.

During the trial, one of the local newspapers published an article commenting on the case. Defendant moved to discharge the jury because some of the jury might have read this publication, since they were permitted to separate. But on the trial of this motion defendant made no attempt to show that a single member of the jury had read, or even heard of, the publication. The door was open for defendant to make such proof, and his remedy was to make it. He cannot ask the court to assume the existence of a thing which he had the easy means of proving but did not prove.

The other objections are discussed in globo in the brief, and may be dealt with in like manner here. The reason for not taking them up separately and in detail is that they are numerous and voluminous. They partake somewhat of the intricate nature of the matter to which they relate, and we now advise counsel that, if in this general treatment of them we have failed to understand the exact bearing of some of them, we shall be but too glad to have the error pointed out to us on application for rehearing. The evidence, to the offer of which these other objections were made, consisted of the books of defendant bank, and of particular pages from certain of the books, and of the testimony of the bookkeeper who had kept the books, explanatory of the entries, and of the testimony of the Bank Examiner, and of one of the liquidating commissioners as experts explanatory of the entries. The evidence, as we understand, had a bearing upon two of the issues before the jury: First, whether the bank was insolvent on the day the deposits were received; second, whether the defendant knew of the insolvency. We are not certain that as bearing upon the first of these issues the evidence was objected to. If it was, the objections were without merit; since it is a plain proposition that for ascertaining the condition of a bank, or for conducting any investigation into its affairs, its books not only may, but in the nature of things necessarily must, be resorted to. Even with the assistance of the books the investigation of such complicated affairs is difficult enough; without the books, the task would be well nigh hopeless. Nor do we understand the learned counsel of defendant to contend that experts cannot be called in to explain complicated bookkeeping which would otherwise be unintelligible to those unversed in bookkeeping. We understand the objections to have had reference to the second above-mentioned issue, namely, whether de-

fendant knew of the insolvency; and their gist to have been that, as bearing upon the latter issue, the entries in the book were inadmissible until they had first been shown to have been made by defendant, or with his knowledge and consent. The objection, if we are correct in this appreciation of their true scope, went more to the effect than to the admissibility; that is to say, the entries were admissible for showing the insolvency of the bank, but not for showing that defendant knew of the insolvency, unless he was shown to have made them, or to have known of their having been made. And, as we understand, this was the view taken by the learned trial judge, since he says that he "constantly instructed the jury that the accused was not to be affected by any entries of which he had no knowledge and which were not approved by him."

The learned counsel for defendant cite the case of Chaffe v. U. S., 18 Wall. (U. S.) 516, 21 L. Ed. 912, where the books of a third person, with whom the party against whom they were offered was not connected, were offered. They cite, also, the following extracts from the Enc. of Ev. vol. 5, p. 259:

"An entry is competent as original and independent evidence only when the enterer had personal knowledge of the facts entered.

"Preliminary to the admission of such evidence it should be shown by the one who has knowledge of the facts that the entry represents the actual transaction."

The law here stated has reference to the admissibility of the entries in favor of the person who made them or of the employer of the person who made them. In defendant's case, on the contrary, the entries are offered, not in favor of, but against, the person who made them; or against the person responsible for them. If the defendant had supervision and direction and control of the bank, the entries were evidence against him, on the same principle that the entries made by the bookkeeper of a partnership are binding on the partners. 17 Cyc. 397; Armistead v. Spring,

120 LA.—31

1 Rob. 567; Calder v. Creditors, 47 La. Ann. 350, 16 South. 852; Succession of Magi, 107 La. 208, 31 South. 660.

Judgment affirmed.