110 So.2d 530

**STATE of Louisiana**

**v.**

**Andrew J. SCOTT.**

No. 44361.

March 23, 1959.

Rehearing Denied April 27, 1959.

Harris M. English, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Duncan S. Kemp, Dist. Atty., Amite, W. M. Dawkins, Asst. Dist. Atty., Denham Springs, Leonard E. Yokum, Asst. Dist. Atty., Hammond, for plaintiff-appellee.

McCALEB, Justice.

On October 19, 1957, at about 2:00 p. m., appellant, a 20 year old Negro, accosted Mrs. Larecy Blount Graham, a white woman, at her residence located in a rural area of Livingston Parish. At the time he made his presence known, appellant was wearing a cloth mask and, when Mrs. Graham screamed, he struck her and her two children, aged seven and four, who were on the scene. After threatening Mrs. Graham and her children with an iron chisel he dragged her into a bedroom, where he raped her. Later in the day, appellant was apprehended for the crime and, on December 6, 1957, he was indicted for aggravated

rape. A trial resulted in a verdict of guilty and, following the pronouncement of a death sentence, this appeal was prosecuted, in which appellant is relying on 11 bills of exceptions for a reversal of his conviction.

The first bill was reserved to the overruling of a motion to quash the indictment. This motion, while predicated on several grounds, was primarily levelled at the alleged insufficiency of the indictment to inform appellant of the nature of the charge against him.

The indictment is couched in the short form provided by Article 235 of the Code of Criminal Procedure (R.S. 15:235) and charges that, on the 19th day of October, 1957, appellant "Did commit aggravated rape upon Mrs. Larecy Blount Graham at her residence about six miles north of Corbin, Louisiana in violation of Article 42 of the Louisiana Criminal Code."

The short form for aggravated rape was tested and approved in State v. Chanet, 209 La. 410, 24 So.2d 670. Hence, it would serve no useful purpose to further discuss the question, particularly since counsel for appellant quotes the Chanet case in full in his brief and seemingly relies on it in support of his argument. This argument appears to be based on the premise that, although the use of the short form is not objectionable, appellant was entitled to a bill of particulars, which the judge ordered the State to furnish, and that, since the State did not fully comply with the Judge's order, the indictment is vulnerable and should be quashed. Stated in another way, counsel is apparently contending that, since appellant is entitled under the Chanet and other cases to a bill of particulars as a matter of right when the charge is drawn under a short form, the failure of the State to supply all of the particulars requested by him has the effect of rendering the indictment invalid.

 There is no merit in this proposition. The failure of the State to furnish the particulars requested by a defendant, who is charged under a short form, does not affect the validity of the indictment, as it is now well settled that a bill of particulars does not amend an indictment nor can it cure or aid its insufficiency in law. See State v. Dabbs, 228 La. 960, 84 So.2d 601, 602; State v. Straughan, 229 La. 1036, 87 So.2d 523 and State v. McQueen, 230 La. 55, 87 So.2d 727. If the particulars furnished by the State do not give the accused all the information to which he is entitled and the judge will not require the district attorney to supply them, the remedy of the accused is to except to the judge's ruling so that it may be reviewed on appeal.

Before terminating our discussion of the motion to quash, we note that appellant has also assailed the indictment on the ground that there has been a systematic exclusion of members of the Negro race in

the selection of the general venire by the jury commission.

This charge, which is made the subject of another bill of exceptions, cannot be considered on a motion to quash the indictment. Articles 202 and 203 of the Code of Criminal Procedure (R.S. 15:202 and 203) point out the procedure for making objections to an array or venire and the time when such objections are to be pleaded. Denial of equal protection of the law cannot be raised on a motion to quash an indictment, which addresses itself to the legal sufficiency of the pleading on its face and not to disqualification of the personnel bringing the charge, which can only be ascertained by proof.

Bill of Exceptions No. 2 was taken to the failure of the State to comply with appellant's motion for a bill of particulars. In this motion, appellant sought information (1) as to the exact hour and time of the commission of the offense charged in the indictment; (2) the place and locality of the offense and (3) the circumstances and facts surrounding the commission of the offense, the manner of the acts by either appellant or complainant in the commission of the offense and whether or not it took place inside a room or other part of a residence or at some definite location outside. On the same day the motion was filed, the judge ordered the district attorney to furnish the particulars requested therein by

Tuesday, March 11th and fixed Thursday, March 13th for the disposition thereof. In compliance with this order, the district attorney timely filed his bill of particulars in which he set forth the information requested in paragraphs (1) and (2) of appellant's motion by stating the locality of the offense and the approximate time (2:00 p. m.) of its commission but refused to furnish the details demanded in paragraph 3 of the motion on the ground that this would compel him to disclose his evidence.

According to the per curiam attached to this bill, by which we are bound, the judge sets forth that counsel for appellant telephoned him on the night of March 12th and advised that he was not going to make any contest on the bill of particulars and that, in view of this, he ruled that this was a waiver by appellant of any objection he may have had to the particulars furnished by the State.

It appears that, on March 17th (the date set for the trial), counsel for appellant stated "Merely for the purpose of the record I wish to except to the ruling of the Court and reserve a bill and attach the motion for and answer to the bill of particulars". Yet, in this Court counsel argues, for the first time, that the judge should have required the State to furnish particulars as to the way the rape was committed.

R.S. 14:42 provides that the offense of aggravated rape is committed un-

der any one or more of the following circumstances: (1) where the female's resistance is overcome by force; (2) where she is prevented from resisting by threats of great and immediate bodily harm accompanied by the apparent power of execution and (3) where she is under the age of 12 years. If the motion for the bill of particulars filed by appellant had specifically requested this information, there is no doubt that the judge would have been obliged to order the State to furnish it, in view of our decision in State v. Holmes, 223 La. 397, 65 So.2d 890, where it was held that, in a prosecution under the short form for a crime which may be committed in several designated ways, the accused is entitled, upon his request, to be informed of the specific way or ways relied on by the State. But an examination of appellant's motion for particulars reveals that he was attempting to require the State to furnish him with the details of its evidence, to which he was not entitled. State v. Poe, 214 La. 606, 38 So. 2d 359 and State v. Michel, 225 La. 1040, 74 So.2d 207. And, while the motion is unquestionably of such broad import as to include information respecting the way in which the rape occurred, such information was neither specifically requested nor was any such demand ever directed to the attention of the trial judge. On the contrary, as stated by the judge, counsel for appellant abandoned any challenge upon the sufficiency of the answer of the State to the

motion for a bill of particulars. In these circumstances, the complaint, raised for the first time in this Court, comes too late.

Bill of Exceptions No. 3 was reserved to the overruling of appellant's motion for a change of venue, which was based mainly on the grounds that appellant was a young Negro, a resident of Baton Rouge, who was without friends or acquaintances in Livingston Parish, charged with the aggravated rape of a well-known white woman of that Parish, who had many friends and relatives therein, some of whom had already been drawn on the general venire, and that, due to the notoriety of the case through newspaper reports and word of mouth, there was so much prejudice created against him throughout the Parish, particularly because of his race, it would be impossible to secure an unbiased and unprejudicial jury which would give him a fair and impartial trial.

In his per curiam to this bill of exceptions, the judge asserts that appellant failed to prove that he could not get a fair trial in Livingston Parish; that most of the witnesses summoned by him testified to the contrary and that, in addition thereto, many prominent citizens of the parish called by the prosecution stated without equivocation that there had been no widespread antagonism against Negroes generally, no mob demonstrations against appellant and that they knew of no reason why he could not obtain a fair trial in the Parish.

■■■■ The burden of establishing that an applicant cannot obtain a fair trial in the parish where the crime was committed rests with him. The test is whether there can be secured with reasonable certainty from the citizens of the parish a jury whose members will be able to try "the case on the law and evidence, uninfluenced by what they may have heard of the matter and who will give the accused full benefit of any reasonable doubt arising either from the evidence or the lack of it. State v. Rini, 153 La. 57, 95 So. 400 and State v. Faciane, 233 La. 1028, 99 So.2d 333 and authorities there cited. The power to grant a change of venue rests in the sound discretion of the trial judge, whose ruling will not be disturbed in the absence of a showing of clear abuse thereof. State v. Johnson, 226 La. 30, 74 So.2d 402; State v. Swails, 226 La. 441, 76 So.2d 523 and State v. Faciane, supra. A review of the evidence on the motion for change of venue reveals that the judge did not abuse his discretion in denying the motion.

In connection with the motion for change of venue, we note that appellant attempted to show that there was a systematic exclusion of Negroes from jury service in the Parish of Livingston. This matter will be considered under appellant's Bill No. 4 which was taken to the overruling of a motion to quash the venire on this ground for, if the motion to quash is well founded,

there would be no point in discussing whether the venue should be changed.

■■■■ We pass on, then, to a consideration of Bill No. 4, which, as aforesaid, was taken to the overruling of the motion to quash the general venire on the ground that there has been a systematic exclusion of Negroes from jury service in Livingston Parish. The testimony of the jury commissioners is to the effect that the registration roll of the parish is generally used in selecting persons for jury duty, there being 405 Negroes out of a total registration of approximately 5,000 persons and that there has never been any attempt to exclude Negroes because of their race. There was one Negro on the grand jury panel which indicted appellant but no Negroes on the petit jury panel. There is no showing whatever by appellant that there was a practice in the past of including a token number of Negroes on the venire and, indeed, nothing from which the conclusion could be drawn of a planned exclusion, the testimony being that all jurors are selected for service without any discrimination as to their race or color. The motion was, therefore, properly overruled. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; State v. Fletcher, 236 La. 40, 106 So.2d 709 and State v. Coleman, 236 La. 629, 108 So.2d 534.

Bill No. 6 was taken to the overruling of a motion in arrest of judgment. This

motion was based in part on the allegation that the indictment is defective and insufficient, which we have already disposed of in our consideration of Bill No. 1. It also reiterates the proposition argued under Bill No. 2 respecting the court's ruling in holding that appellant had waived any objection he might have had to the bill of particulars furnished by the State, which we have covered in our discussion of Bill No. 2.

█ In addition, the motion in arrest alleges that the general charge of the judge to the jury was faulty in that he stated, in giving the mandatory list of responsive verdicts to the charge of aggravated rape, that it could find appellant "guilty or guilty as charged", which meant the same thing. Appellant's complaint is that, since Article 386 of the Code of Criminal Procedure (R.S. 15:386) lists only five responsive verdicts for aggravated rape [1] and does not include "guilty" but only "guilty as charged", the judgment should be arrested and appellant discharged.

This claim is without any substance. The jury found appellant "guilty as charged", which is a responsive verdict under R.S. 15:386. It is difficult to see how appellant was prejudiced by the judge instructing the jury that one of the five responsive verdicts was "guilty or guilty as

charged". If counsel had thought so, he should have perfected a bill of exceptions to the general charge.

█ Bills of Exceptions Nos. 7 and 8 were taken at the hearing of a motion for a new trial to the refusal of the judge to receive evidence assailing the credibility of the witness, Joe Sharp, who had testified for the State as an expert on the handling of bloodhounds. Appellant sought to introduce the criminal record of Joe Sharp, which revealed that he had been convicted six times for various offenses. In addition, he tendered the testimony of two witnesses, who it is alleged would state that Sharp told them after the trial that the bloodhounds could not be relied on as completely as he had made it appear in his evidence, and also that he had not found certain objects along the bloodhound trail as he had stated to the jury.

There is no merit in these bills. R.S. 15:511 sets forth the conditions under which a new trial may be granted for newly discovered evidence, declaring that it must affirmatively appear that, notwithstanding the exercise of reasonable diligence, the evidence was not known before or during the trial and that, among other things, " * * * it does not merely corroborate or impeach the credibility or testimony of any witness examined at the

---

1. Guilty as charged; guilty without capital punishment; guilty of attempted aggra- vated rape; guilty of simple rape and not guilty.

trial; that it is also material that it ought to produce a different result than the verdict reached, and that it is admissible."

At best, since the trial judge found that the evidence of Sharp was merely corroborative, it is doubtful that the testimony impeaching his statement would have produced a different result if it had been heard by the jury. See State v. Richard, 223 La. 674, 66 So.2d 589.

■ Bill No. 9 was reserved to the overruling of appellant's objection to Joe Sharp testifying as an expert in the handling of bloodhounds. There is no testimony attached to this bill with respect to the qualifications of Sharp but the trial judge states in his per curiam that it was shown that Sharp had been handling bloodhounds for many years and that, during the last few years, he had handled the bloodhounds for the Sheriff's office in East Baton Rouge Parish and also for other sheriffs in the State.

In these circumstances, we cannot say that the judge erred in concluding that Sharp was an expert handler of bloodhounds, as presumably appellant's counsel was given a full opportunity to cross-examine the witness as to his qualifications.

■ Bill No. 9 contains a second portion which is levelled at the refusal of the Court to allow defense counsel the opportunity to cross-examine Deputy Sheriff C. A. Grambling concerning his personal knowledge of whether Sharp had served time in the State Penitentiary for cattle theft.

We find no error in the ruling of the judge. Impeachment of a witness by evidence of conviction cannot be done in this manner. Before proof of conviction can be adduced from any other source, it is prerequisite that the witness sought to be impeached be questioned on cross-examination as to his conviction and have failed distinctly to admit the same. R.S. 15:495.

During the course of the trial, the State called to the stand Dr. Robert Louis Fernberg, who had made an examination of the genital organs of the prosecutrix shortly after 9:00 p. m. on the day she was raped. He testified that he found male sperm in her vagina. Since counsel for appellant was contending, under the plea of not guilty, that appellant was infected with gonorrhea at the time of the offense and that, if he had intercourse with the prosecutrix, the germs of this disease would have been present or that she would have become pregnant, Dr. Fernberg was questioned as to this phase of his examination. He testified that he did not find any gonorrhea germs in the sexual organs of the victim at the time of his examination and that this was understandable, in view of her statement to him that she had taken a douche before her visit.

Counsel for defendant extensively cross-examined Dr. Fernberg on his findings, endeavoring to show that the witness had no way of knowing whether or not the victim had sexual intercourse with another person after she was raped. When the district attorney objected to this evidence, the Court stated "That has no bearing on this case so far as I can see. You are going too much in detail." But the judge thereafter told counsel that he was not trying to curtail his cross-examination with respect to relevant evidence. Continuing on, defense counsel questioned the doctor about a disease called urethritis, described by him as an infected process of the urethral canal, which is part of the penis. After the witness had answered several questions touching on this disease, the judge sustained an objection of the district attorney as to further testimony on the urethra, remarking "I think you have gone into that in every detail possible. It all means the same thing." Despite the ruling, counsel continued to question the witness on this subject, the district attorney again objecting and the judge sustaining the objection. Following colloquy between the court and defense counsel, the latter remarked "I wish to elicit and introduce this testimony in the record in order to establish that a female alleged to have claimed to have been raped by a male who had gonorrhea—the medical examination of her should have shown the presence of gonorrhea germs along with the male sperm deposited in her female organs, as heretofore testified by this witness as her Medical Examiner." The district attorney immediately objected to this statement and the judge then said "That has not been proved and there is no evidence here to say it." Defense counsel then said "I am offering that later" and the judge remarked "I can't see where any further testimony concerning this type of testimony in this case is needed." At this point, defense counsel reserved Bill No. 10 and he claims in this Court that the comments of the judge were comments on the facts of the case, which are prohibited by our law and entitles appellant to a new trial.

It is manifest that the first two above quoted statements of the judge cannot be characterized as comments on the facts. The record shows that counsel had been allowed to go far afield in his cross-examination. Dr. Fernberg had testified fully on the condition in which he found the female organs of the prosecutrix at the time he examined her and had answered all questions having any bearing on the case. Hence, counsel's continued prodding of the witness on the same subject and his attempts to elicit obviously immaterial evidence became amenable to judicial interference. Article 369 of the Code of Criminal Procedure (R.S. 15:369) vests the trial judge with the sound discretion to stop prolonged, unnecessary and irrelevant ex-

amination of a witness even though no objection be urged by opposing counsel. The expression of the judge that this evidence had no bearing on the case was not a comment on the facts and, in the same category, was his statement that counsel had gone into every possible detail—which was assigned as his reason for stopping counsel in his irrelevant cross-examination about urethritis.

The same may be said of the final statement of the judge, in which he told counsel that he was unable to discern that there was a need for any further evidence as to the doctor's findings on the condition of the victim's sexual organs. Indeed, the only one of the above quoted remarks of the judge which may be characterized as a comment on the evidence in his statement, in reply to defense counsel, that the latter's claim that gonorrhea germs should have been present along with the male sperm in the victim's female organs " * * * has not been proved and there is no evidence here to say it".

▆ It is generally understood under our law that a trial judge in a criminal case may not comment on the facts in the presence of the jury. This rule is found throughout our criminal · jurisprudence which gives effect to an implied prohibition

contained in Section 9 of Article 19 of our Constitution.[2] There is also statutory law on the subject but it seems to be confined to the province of the judge in instructing the jury. R.S. 15:384 states that the judge shall charge the jury on the law but not on the facts; that he shall not state or recapitulate the evidence; repeat the testimony of a witness, nor give an opinion as to the facts that have been proved or refuted.

But there is a clearly defined exception to this rule, which we think governs the case at bar. It is well settled that it is not improper for the Court to make statements which may pertain to the facts in the presence of the jury " * * * while ruling on the admissibility and effect of evidence and the validity of objections thereto * * * provided they are not unfair and prejudicial to accused." See 23 C.J.S. Criminal Law § 992. Also 53 Am.Jur.Trial Section 79. This exception has been repeatedly recognized and applied by this Court. See State v. Walker, 50 La.Ann. 420, 23 So. 967; State v. Hoffman, 120 La. 949, 45 So. 951; State v. Weathers, 127 La. 930, 54 So. 290; State v. Dreher, 166 La. 924, 118 So. 85; State v. Childers, 196 La. 554, 199 So. 640; State v. Vernon, 197 La. 867, 2 So.2d 629; State v. Walker, 204 La. 523, 15 So.2d

2. That Section declares in part: "The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence, having been charged as to the law applicable to the case by the presiding judge."

874 and State v. Nicolosi, 228 La. 65, 81 So.2d 771.[3]

In State v. Childers, supra [196 La. 554, 199 So. 643], where the judge, in overruling an objection to a question propounded to a witness as to the contents of a will, stated that the witness had testified that the will he read was in the hands of the defendant, the Court quoted with approval the trial judge's per curiam to the bill in which complaint had been made that this was a comment on the evidence, as follows:

" 'No reversible error was committed by the Court for the reason that it was not a comment on the facts, but was the basis of the Court's overruling the objection made as to secondary evidence. The ruling as made did not convey to the jury any impression of the trial Court's opinion as to the guilt of either defendant. State v. Dreher, 166 La. 924, page 967 (118 So. 85 [at] page 101) (bill 36.)

" ' "It is not improper for the Court to make remarks in the presence of the jury, giving its reasons for admitting or excluding evidence, or to state the purpose for which evidence is offered or admitted, etc." 16 C.J. 832—Criminal Law Sec. 2101.' "

In State v. Walker, 204 La. 523, 15 So. 2d 874, 877, where the trial judge, in explaining his ruling to defense counsel that the testimony sought to be elicited formed part of the res gestae, remarked "That it all took place in two or three minutes", the Court found that the comment was not of such a nature as to require the reversal of the conviction and recognized and applied the above stated exception to the general rule as to comments on the evidence. After citation of the pertinent authorities in support of its ruling, the Court said:

"The remarks made by the trial judge were not such as would influence the jury in reaching a verdict, nor could they be construed as expressing an opinion as to the guilt or innocence of the accused."

▉ So we say in this case that the remark of the judge, that counsel's statement in the presence of the jury (that, if the victim had been raped by a male who had gonorrhea, the medical examina-

---

3. The cases cited by defense counsel do not take into account the exception to the general rule concerning comments on the facts. Moreover, none of these cases involved remarks made while ruling on the admissibility of evidence. In State v. Iverson, 136 La. 982, 68 So. 98, the comment on the facts was made by the judge in refusing a requested charge.

In State v. Davis, 140 La. 925, 74 So. 201, the objectionable remark occurred while the judge was refusing to order the jury to disregard a statement made in argument by the district attorney. And in State v. Ballou, 140 La. 1086, 74 So. 562, the judge made a gratuitous prejudicial remark as to the credibility of a defense witness.

tion should have shown the presence of gonorrhea germs along with the male sperm in her female organs) had not been proved and that there was no evidence to show it, was not such a comment as would have influenced the jury in reaching a verdict and did not in anywise constitute an expression of an opinion as to the guilt or innocence of appellant.

Under these conditions, the comment does not afford good ground for ordering a new trial. In our most recent decision on this subject, State v. Nicolosi, supra, where it was found that the judge committed error in repeating the testimony of a witness in violation of R.S. 15:384, we nevertheless refused to grant a new trial. There, we applied the injunction contained in Article 557 of the Code of Criminal Procedure (which we think is clearly controlling under the state of facts presented here) that no new trial shall be given in a criminal case as to any error of any matter of pleading or procedure unless it appears to the appellate court, after an examination of the entire record, " * * * that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."

When appellant was called for sentence, his counsel made objection thereto on the ground that the verdict of the jury was contrary to the law and the evidence. This objection was overruled and thereupon counsel reserved Bill No. 11 and attached thereto all of his other bills, his motion in arrest of judgment and for a new trial, the court's written charge to the jury and the remainder of the entire record.

■■■ This is novel procedure under our law. It is too well settled to require the citation of authority that a motion for a new trial based on the ground that the verdict is contrary to the law and the evidence, presents nothing for review in this Court as our appellate jurisdiction extends only to questions of law and not of fact. Furthermore, we could not review the evidence in this case as all of it is not in the record.

Finally, we consider Bill No. 5, which was taken to the overruling of appellant's motion for a new trial. This motion reiterates all of the complaints tendered in the other bills of exceptions, which have been heretofore discussed and rejected and also assigns several other reasons for the granting of a new trial. Our discussion will be confined to these additional reasons.

■■■ Paragraph No. 5 of the motion for a new trial was directed against the admission in evidence, over objection of defense counsel, of a shirt and a mask identified by Joe Sharp as being worn by appellant on the day of the crime. This complaint, dealing with the admission of evidence, is not properly presented for the

first time on a motion for a new trial and counsel's failure to take and perfect a bill of exceptions ordinarily would preclude a review of the alleged error by this Court. However, the district judge declares in his per curiam that the shirt and mask were received in evidence for the sole purpose of rebutting the testimony of two defense witnesses who stated that the articles did not belong to appellant. We find no error in the ruling.

Paragraph No. 6 of the motion is in the same category as complaint No. 5 and refers to the rebuttal testimony of two deputy sheriffs who said that, during their investigation of the crime, the two witnesses above referred to had told them that the particular shirt offered in evidence did belong to appellant. We see no substance in the complaint.

Allegations Nos. 12 and 13 declare that no proper identification was made of appellant in view of the fact that there was no fingerprint evidence taken nor was appellant ever placed in a "line up" and that the verdict is contrary to the law and the evidence because there was some conflict in the testimony as to the time of the attack. Suffice it to say that these arguments pertain only to questions of fact which are not within the scope of our jurisdiction.

■■■■ Paragraph No. 14 alleges that the trial judge committed error in refusing to sequester three deputy sheriffs of the parish, two of whom were called as witnesses. The trial court refused to sequester the deputies because the sheriff advised him that it was necessary for the deputies to remain in the courtroom to maintain order. While a bill of exceptions was reserved to the judge's ruling on this point it was not perfected by counsel. But, aside from this, there is no showing that the judge abused his discretion in refusing to order the sequestration of the deputy sheriffs. It is well settled that the ordering of or refusing to order sequestration of witnesses is within the sound discretion of the trial court and its action will not be disturbed unless shown to be arbitrary, unreasonable and prejudicial. State v. Palmer, 227 La. 691, 80 So.2d 374.

■■■ Paragraph No. 15 of the motion for a new trial alleges that the prosecutrix left the courtroom on many occasions and conversed with other witnesses who were sequestered under the rule of court. The trial judge says in his per curiam that, as soon as defense counsel directed his attention to the fact that the prosecutrix was leaving the courtroom, he immediately instructed her not to do so while court was in session. There is no showing whatever as to whom she contacted while she was out of the courtroom and, in the absence of any evidence that she tried to divulge information to the witnesses under sequestration or to otherwise influence their testimony so

as to prejudice appellant, the complaint made in the motion for a new trial is without substance.

The conviction and sentence are affirmed.

110 So.2d 541