311 So.2d 847 (1975)
STATE of Louisiana
v.
Milton TRAYLOR.
No. 55695.
Supreme Court of Louisiana.
April 24, 1975.
R. Harmon Drew, Robert C. White, Drew, White, Drew & Drew, Minden, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles A. Marvin, Dist. Atty., James S. Harris, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The defendant was charged by bill of information with the offense of second degree murder. LSA-R.S. 14:30.1. The jury returned a verdict of guilty, and the *848 trial judge sentenced him to life imprisonment.
During the trial, defense counsel reserved seven bills of exceptions. Defendant relies upon four of these bills for a reversal of his conviction.

BILL OF EXCEPTIONS NO. 2
This bill was reserved when, over defense objection, the trial judge accepted Dr. Richard C. Kamm as an expert in the field of pathology.
Dr. Kamm received his Bachelor of Science degree in biology and chemistry from Memphis State University, his medical degree from Louisiana State University, and his Ph.D. in experimental pathology from the University of Tennessee. During the three years prior to testifying, he served as an instructor at the LSU Medical School in Shreveport. He was a member of the Shreveport Society of Clinical Pathologists, the Shreveport Medical Society, the Louisiana State Medical Society, and Alpha Omega Alpha, an honorary medical fraternity.
The competence of a witness to testify as an expert is a question of fact. The trial judge has wide discretion in passing upon the qualifications of an expert witness. On appeal, his ruling will not be disturbed in the absence of a clear showing of abuse of discretion. LSA-R.S. 15:466; State v. Vassel, La., 285 So.2d 221 (1973).
Defendant contends that the witness's training and experience was primarily in the field of chemical pathology, relating to the reaction of drugs in the body, and that his training and experience in anatomical pathology was limited to such an extent that he was not a qualified expert in that field.
The record reflects that while his higher degree was in experimental pathology, he also had a medical degree, and his current teaching was "in anatomic and clinical pathology."
The witness's expert testimony does not appear in the record. Assuming, however, that it was in the area technically designated as anatomical pathology, the record supports his qualifications.
We find no abuse of discretion here. Hence, the bill of exceptions is without merit.

BILL OF EXCEPTIONS NOS. 5 AND 7

These bills relate to the admission into evidence of confessions made by the defendant. Although conceding that the defendant was given his Miranda warnings, the defense argues that the defendant nevertheless did not understand the rights waived.
The testimony of the law enforcement officers present during the interrogations, coupled with the signed waivers of the defendant (who had a ninth grade education), establish that the statements admitted were voluntarily made by a defendant cognizant of his rights. State v. Forman, La., 271 So.2d 523 (1973).
The defendant was interrogated on three occasions. Max Marr, special agent for the F.B.I., testified that, prior to the first interrogation, he orally gave the defendant the Miranda warnings, and that the defendant then read and signed a standard waiver form.
Prior to the second interrogation, another F.B.I. agent read the defendant his Miranda rights, and the defendant signed a second waiver form.
The third interrogation was recorded. Prior to questioning the defendant concerning the offense itself, the defendant waived the Miranda rights. He admitted that his rights had already been explained to him. The defendant signed every page of the transcribed interrogation and initialed two minor corrections appearing in it.
Bills of Exceptions Nos. 5 and 7 are without merit.

*849 BILL OF EXCEPTIONS NO. 6
On the second day of trial, the jurors, who were not sequestered, were allowed to separate for the night. The following morning, February 14, 1974, defense counsel moved for a mistrial, alleging that a front page article which had appeared the preceding afternoon in the local newspaper, the Minden Press-Herald, had prejudiced "our case so that we could not have a fair trial."
The trial judge then questioned the members of the jury individually, asking if any of them had read an article in the Press-Herald relating to the trial of the defendant. Only Jurors Nos. 12 and 8 expressed any knowledge of the article. Juror No. 12, Mr. Madden, stated that he read the article. He was questioned at length outside the presence of the other jurors concerning what effect the article might have on his ability to fairly determine guilt or innocence.
Juror No. 8, Mr. Parker, who was also questioned in the absence of the other jurors, stated that, although he had not personally read the article, his wife had mentioned it to him. Defense counsel then inquired as to the wife's reference, and Mr. Parker responded, saying:
"She said something like uh, I see he's a young boy and he's wanted for rape or something out of state, or something before I could tell her that I wasn't supposed to discuss it. It was in the paper and she didn't know any difference on that."
Defense counsel then interrogated Parker concerning the effect of the reference upon his impartiality as a juror, as follows:
DEFENSE COUNSEL: "Well, can you say that it would have no influence whatsoever on what you might decide in this case?"
JUROR: "Yes, sir."
DEFENSE COUNSEL: "You're positive it would have no influence at all?"
JUROR: "Yes, sir."
In denying the mistrial, the trial judge ruled:
"First having proceeded under the motion to determine which jurors might have read or had mentioned to them this article, which is in question, and upon hearing the questions addressed to the two jurors, the only two jurors, Mr. Madden and Mr. Parker, and the answers given by these jurors, this Court is of the opinion that Mr. Parker's contact with the article which his wife attempted to tell him about and which he did not read himself would not disqualify him, and it's possible that Mr. Madden's reading of the article would not disqualify him as an impartial juror, but the Court would feel that it might, and under those circumstances would disqualify Mr. Madden and under Article 789 of the Code of Criminal Procedure would direct that the alternate juror replace Mr. Madden and that the trial proceed. The motion for mistrial is overruled."
Defense counsel argues that the trial judge committed error by failing to disqualify Mr. Parker as a juror and declare a mistrial. He asserts that the wife's reference to the newspaper article undoubtedly prejudiced the defendant. We disagree.
In State v. Green, 244 La. 80, 150 So.2d 571 (1963), this Court faced a related issue. There, we found that there was no evidence that the defendant had been prejudiced by an article published during trial for the reason that no showing had been made that any of the jurors had read the article. Although the above finding was the primary basis for the decision, the holding was buttressed by our earlier decision in State v. Hoffman, 120 La. 949, 45 So. 951 (1908), holding that the news article must have biased the juror to warrant a mistrial. We quoted approvingly from the Court syllabus in Hoffman, as follows:
"`Though the jury have been allowed to separate, the publication of comments upon the case by a local newspaper during *850 the trial will not be ground for discharging the jury, in the absence of proof that the jurors, or some of them, actually read the comments, and were so impressed thereby as to be disqualified from further service on the jury.'" (Italics ours.)
It is only when there is a substantial likelihood that the extra-judicial communication will influence one or more jurors in a verdict that a mistrial is warranted. See ABA Standards, Fair Trial and Free Press, § 3.6 (1974). Here, the response of the juror was clear and unqualified. The trial judge admonished the jury that only evidence presented at the trial could be considered in determining guilt. Under the special facts of this case, we conclude that the ruling of the trial judge was correct, for it does not appear that the extra-judicial information possessed by the juror would influence his verdict. See Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).
This bill of exceptions is without merit.
For the reasons assigned, the conviction and sentence are affirmed.