*1094 HAMLIN, Justice.
The defendant, Clarence Wilson, appeals from his conviction of the crime of aggravated rape (a violation of LSA-R.S. 14:42) and his sentence to death therefor.
During the course of trial, twenty-five bills of exceptions were reserved; in this Court, twenty-four bills are presented for consideration—Bill of Exceptions No. 4 having been abandoned.
Bill of Exceptions No. 1 was reserved when the trial court overruled a motion to quash the indictment filed against defendant. This motion averred that the indictment was fatally defective, in that it did not set forth the date of the alleged offense.
In an indictment filed against the defendant on November 25, 1959, it was alleged that the defendant had committed the crime of aggravated rape on the 30th day of September in the year of Our Lord One Thousand Nine Hundred and (blank). On February 18, 1960, the trial court permitted the State to amend the indictment by inserting in the blank space thereof the word “fifty-nine”, which had been inadvertently omitted; on the same date, the amended indictment was read to defendant, and he pleaded not guilty by reason of insanity. The motion to quash, supra, was filed on March 14, 1960; it was overruled on March 24, 1960, when defendant was ¿gain arraigned and pleaded “guilty by reason of insanity and not guilty.”
LSA-R.S. 15:234 provides:
“No indictment shall be held insufficient for * * * omitting to state the time at which an offense was committed where time is not of the essence of the offense, nor for stating the time imperfectly, * *
LSA-R.£>. 15:253 recites:
“No indictment shall be quashed, set aside or dismissed or motion to quash be sustained * * * on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court in its discretion permit. The court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence. If any amendment be made to the substance of the indictment or to cure a variance between the indictment and the proof, the accused shall on his motion be entitled to a discharge of the jury, if a jury has been impaneled and to a reasonable continuance of the cause unless it shall clearly appear from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to *1096 which the amendment is made or that his rights will be fully protected by proceeding with the trial or by a postponement thereof to a later day with the same or another jury. * * * ”
Aggravated rape is a capital crime and does not fall within the provisions of the statute of limitations or prescription. LSA-R.S. 15:8. Time is not of the essence of the crime, and the amendment of an indictment charging the commission of such offense by an insertion of the year during which the alleged crime was committed cannot as a general rule prejudice the defendant where his defense is not that of alibi. Cf. State v. Wichers, 149 La. 643, 89 So. 883. This Court has also held on a number of oc.casions that an indictment should not be held invalid or insufficient for stating incorrectly the date of the alleged crime, if the date or time be not of the essence of the offense. State v. Williams, 143 La. 424, 78 So. 662.
The instant indictment was amended before the first arraignment and the entry of the first plea, before the second arraignment and. the entry of the second plea, and before the trial had commenced; it was, therefore, amended within due time. An examination of the record discloses that the defendant suffered no prejudice and was not impeded in .his. presentation of proof because of the amendment to the indjctment. The trial court neither abused its discretion nor acted contrary to the provisions of the statutes quoted supra. State v. Walters, 16 La.Ann. 400; State v. Cornelius, 118 La. 146, 42 So. 754; State v. Anderson, 125 La. 779, 51 So. 846; State v. Anderson, 136 La. 261, 66 So. 966; State v. Johnson, 228 La. 317, 82 So.2d 24; State v. Blankenship, 231 La. 993, 93 So.2d 533.
Bill of Exceptions No. 1 is without merit.
We believe that Bills of Exceptions Nos. 2 and 13 should be discussed together.
On 'March 14, 1960, defendant filed a second motion to quash the indictment, averring therein that the indictment was null and void because of the systematic exclusion from the Grand Jury of persons of the Negro race, in violation of defendant’s rights to due process of law and equal protection of the laws under the Constitution of the United States, particularly the Fourteenth Amendment. Alternatively, defendant averred that should it be found that all Negroes were not systematically excluded from the Grand Jury, then that the numbers found on the Grand Jury were so few as not to be at all representative of the numbers of Negro citizens eligible to serve on the Grand Jury within Tangipahoa Parish, and that the number actually’ included in the Grand Jury were added to the Grand Jury .solely for the purpose of giving the appearance of compliance with due process and equal protection granted *1098 to yoúr petitioner under the Constitution of the United States.
The Minutes of the trial court of Marcl 24, 1960, recite:
“The motion to quash on ground that the accused was denied his right by a systematic exclusion of Negroes on the panel, of Petit and Grand Jurors, which was argued and overruled by the Court, to which ruling the counsel for accused excepts and reserved bill to said ruling.” (Emphasis ours.)
The record recites:
“By Mr. Mack: Your Honor, on the next motion to quash it will probably take quite a good bit of testimony.
“By the Court: On what is it based?
“Mr. Mack: On the systematic exclusion of members of the negro race from the Grand Jury panel which indicted the accused.
“By Mr. Yokum: Mr. Yokum quotes from the following: 110 So.2d., p. 530, State of La. v. Andrew J. Scott, ‘Criminal Law: Contention that defendant had been denied equal protection of law by systematic exclusion of negroes from the Jury was not reviewable on bill reserved to overruling of motion to quash indictment.’ In the body of the decision it says: this mat-
ter could not be ’considered on a motion to quash.
“By the Court: The Court sustains the State’s objection to taking this question up on a motion to quash.
“By Mr. Covington: To which ruling of the Court counsel for defendant objects and reserves a formal bill of exceptions and asks that the motion and the ruling of the Court be made part of the bill.
“By the Court: The motion to quash based upon the Defendant’s contention that he has been denied his equal rights by a systematic exclusion of the colored race from the Grand Jury and the Petit Jury Venire is overruled.
* * * * * *
“By the Court: The question of whether the inclusion or exclusion of colored people from the Jury is not reviewable on a motion to quash, as shown by decision of the State Supreme Court and reviewed by the United States Supreme Court and it is reported in 110 So.2d, p. 530—State of La. v. Andrew J. Scott.” (Emphasis ours.)
We find no bill of exceptions in the record as to the ruling of the trial court insofar as “Grand Jurors” are concerned.
The record 'does not disclose that any motion to quash the indictment predicated on the ground that defendant was denied *1100 equal protection of the laws because of exclusion of Negroes on the petit jury panel was ever filed.
Bill of Exceptions No. 2 sets forth that the defendant “entered a motion to quash the indictment for the reason that in the selection of the petit jury panel there was systematic exclusion of members of the Negro race, the defendant being thereby deprived of his constitutional rights and particularly those rights guaranteed under the 14th Amendment to the Constitution of the United States.” (Emphasis ours.) Thus it appears that this bill applies to a motion which was never filed. In short, no bill was reserved to a motion which was overruled, and Bill of Exceptions No. 2 was reserved to the overruling of a motion which was never filed.
Trial herein began on March 28, 1960; the Minutes reflect that on March 30, 1960, defendant filed a motion to quash the tales jurors and the regular panel for the reason that there was not a ratio of Negroes drawn on the regular panel or on the tales list. The motion recites that it is a motion to quash the panel of tales jurors. It avers that the panel of tales jurors submitted for the purpose of completing the jury panel in the instant cause was selected in an illegal and unconstitutional manner and in violation of defendant’s rights under the Constitution of the United States, particularly the Fourteenth Amendment, in that members of the Negro race were systematically excluded from the panel. Alternatively, it is averred that if Negroes were not systematically excluded from such panel, then that the number included were sc few as not to be at all representative of the number of Negro citizens eligible to serve on such panel within Tangipahoa Parish.
Evidence was heard on the above motion, which evidence was addressed not only to the tales jurors hut to the general venire.
The trial court overruled defendant’s motion to quash the panel of tales jurors “for the reason that there has been no reasons shown or proven of the systematic exclusion or systematic inclusion of persons of the colored race, that they have been discriminated against.” Bill of Exceptions No. 13 was reserved to this ruling; counsel for the defendant made the motion, the list of the special petit jurymen, the talesmen list, and the ruling of the court, part of the formal bill.
Bill of Exceptions No. 13 states that it was reserved to the refusal of the trial judge to quash the venire on the ground of systematic exclusion of members of the Negro race from said venire, which allegedly deprived the defendant of his rights under the 14th Amendment to the United States Constitution. Incorporated in the bill is the testimony of the Registrar of Voters of Tangipahoa Parish, which recites that of the 23,320 voters in Tangi *1102 pahoa Parish only 3,571 or 15% are colored. In the bill counsel states that he introduced, offered, and filed in evidence, the original venire of jurymen and the list of tales jurors called, which indicated that less than approximately 3% of the venire was colored. Thus, we have another exceptional situation: the motion refers to tales jurors; the Minutes refer to tales jurors and the regular panel; the bill states that defendant “entered a motion that the venire be quashed;” and, evidence was heard as to the venire and tales jurors.[1]
LSA-R.S. 15:179 provides that:
“At the time ordered by the district judge the jury commission shall meet at the office of the clerk of the district court, and in the presence of two or more witnesses, shall select from the persons qualified to serve as jurors for their respective parishes three hundred persons, a list of whom shall be made under the supervision of the commission, and said witnesses. * * * ”
Three jury commissioners for the Parish of Tangipahoa testified that in the selection of the general venire list from the parish registration list, they considered the competency of the individuals (LSA-R.S. 15 :172) and not their color. They affirmatively stated that they did include the names of Negroes, but that such names were not selected with any particular design or number in mind. They also testified that the same procedure was followed with respect to the selection of the lists of tales jurors employed in the instant matter. Their testimony has not been contradicted.
We find that the following statement from the case of State v. Scott, 237 La. 71, 110 So.2d 530, 534, certiorari denied, 361 U.S. 834, 80 S.Ct. 85, 4 L.Ed.2d 75, is applicable here:
“ * * * There is no showing whatever by appellant that there was a practice in the past of including a token number of Negroes on the venire and, indeed, nothing from which the conclusion could be drawn of a planned exclusion, the testimony being that all jurors are selected for service without any discrimination as to their race or color. The motion was, therefore, properly overruled. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991; State v. Fletcher, 236 La. 40, 106 So.2d 709 and State v. Coleman, 236 La. 629, 108 So. 2d 534.”
In view of the fact that evidence was heard as to the general venire and tales jurors (LSA-R.S. 15:151), we find that the accused has not been prejudiced by the rulings complained of; therefore, *1104 Bills of Exceptions Nos. 2 and 13 are without merit.
Bill of Exceptions No. 3 was reserved to the overruling of a motion for a change of venue filed by defendant. Defendant averred in the motion that he had good reason to believe and did believe that because of the great prejudice existing against him in the public mind, an impartial trial could not be obtained in Tangipahoa Parish.
On trial of the above motion, the defendant called Mr. Charles Giannobile as a witness. Mr. Giannobile testified that on October 2, 1959, he apprehended the defendant on his property, and that shortly thereafter the defendant was taken into the custody of police officers. He stated that although he had a rifle on the defendant, he felt that the law should handle him. He said that a number of persons talked with him after defendant’s arrest, and that he thought “most of them wanted me to shoot him.”
The State presented the testimony of five witnesses, namely, Florence S. Byers, President of the Tangipahoa Parish Police Jury; John J. Dahmer, Mayor of Pdnchatoula, Louisiana; James A. Stire, Mayor of the City of Hammond, Louisiana; Oliycr B. Harrell, Vice-President of the Guaranty Bank in Hammond, Louisiana; and, Frank E. Patenotte, a Member of the Jury Commission and President of the Guaranty Bank and Trust .Company, Amite, .Louisiana. They all testified that the defendant could and would receive a fair and impartial trial.
LSA-R.S. 15:293 recites:
“If, on the trial of any application for a change of venue, it shall be established, by legal and sufficient evidence, that a fair and impartial trial can not be had in the parish in which the crime shall be charged to have been committed and in which the case is pending, the judge shall order a change of venue to an adjoining parish of the same judicial district, or to a parish of an adjoining district, and, by preference, to that parish in which a district court shall next be held.”
The burden of establishing, by legal evidence, that a defendant could not secure a fair and impartial trial in the parish where the indictment is laid rests with the applicant. State v. Faciane, 233 La. 1028, 99 So.2d 333. The test to be applied is: “Can there be secured with reasonable certainty from the body of -such citizens, with the use of the safeguards of the law,' a jury whose members will be able to try the case upon the law and evidence adduced on the trial, uninfluenced by whaf they may have heard of the matter, and who will give the accused the full benefit of any reasonable doubt which may arise from either the evidence or the lack of it? ” State v. Rini et al., 153 La. 57, 95 So. *1106 400, 404; State v. Faciane, supra; State v. Scott, 237 La. 71, 110 So.2d 530.
“Applications for a change of venue are addressed to the sound discretion of the trial judge and unless an abuse of such discretion is shown his ruling will not be interfered with. * * * ” State v. Roberson, 159 La. 562, 105 So. 621, 622; State v. Johnson, 226 La. 30, 74 So.2d 402; State v. Faciane, supra; State v. Scott, supra.
In the instant case, the proof does not reflect that public opinion in Tangipahoa Parish was crystalized and fixed against the defendant. Only one witness was presented on his behalf, and this witness’s testimony does not reflect an anticipation of difficulty in the selection of an impartial jury. We find no abuse of discretion by the trial judge; the evidence discloses that the trial judge’s ruling was correct. Bill of Exceptions No. 3 is, therefore, without merit.
Bill of Exceptions No. 5 was reserved to the trial court’s denying defendant’s motion to he admitted to’thé East Louisiana State Hospital for a period of ’thirty days, for observation and report. ■ ’■
At the conclusion of a sanity hearing held on March 28, 1960, counsel for the’ defendant dictated the above motion into the record. He stated:
“Counsel for defense insists on a plea of insanity and that defendant be readmitted to the East Louisiana State Hospital for a period of 30 days for observation and report on the grounds, that the cursory examination by Dr. Sturm, admittedly the only specialist in the field of diseases of the mind, examined him only one time for about 45 minutes in the jail, that he was not under a period of observation for the length of time which would be necessary to determine his sanity—particularly in that, many persons who are admittedly insane have lucid intervals and that such a cursory examination is in violation of the spirit of R.S. Title 15, Sections 267 & 268.” [2]
*1108 In denying defendant’s motion, the trial court stated that it was of the opinion at that time, after the examination of the Lunacy Commission and after the examination of its written report, that the defendant was capable of understanding the seriousness of the charges against him and was able to assist counsel in his defense. The trial court held defendant presently sufficiently sane to be tried under the laws of the State of Louisiana.
The record reflects that on February 2, 1960, the District Attorney for the Parish of Tangipahoa filed a written motion in the trial court, praying that an order issue appointing the coroner and two other disinterested physicians to examine the defendant to determine his then present mental condition -and his mental condition at the time of the commission of the alleged crime and report their findings to the court in due course.[3] In compliance with the motion, the trial judge issued an order appointing the coroner, Dr. L. L. Ricks, and Drs. Benjamin Newell', Jr. and C. E. Sturm to examine the defendant, their report to be filed no latefi than March 1, 1960.
At the sanity hearing, Dr. Charles E. Sturm, senior psychiatrist and doctor in charge of the criminal building at the East Louisiana State Hospital, testified that the defendant understood the seriousness of the offense with which he was charged, was able to differentiate between right and wrong, and could assist counsel in his defense. He said he examined the defendant for about forty-five minutes in the parish jail.
Dr. Benjamin Newell, Jr., a general practitioner in Amite, Louisiana, testified that he examined the defendant while he was confined in jail, the examination lasting from one to one and one-half hours. He said that the defendant could understand the seriousness of the crime with which he was charged.
*1110 Dr. L. L. Ricks, Coroner of Tangipahoa Parish, testified that he examined the defendant three times—once by himself, once with Dr. Newell, Jr., and once with Dr. Sturm. Dr. Ricks was of the opinion that the defendant was sane at the time the crime was committed and was sane at the time of the sanity hearing. He affirmed that a written report had been made and submitted to the court. The report is not in the record.
Other than pleading insanity, the defendant offered no evidence on his own behalf with respect to his mental condition. The record is devoid of any contention that he could not understand the proceedings and the nature of the offense with which he was charged, or that he could not assist counsel with his defense.
“Under our law the judge is given the exclusive responsibility of ultimately determining the mental capacity of an accused under a plea of present insanity, subject to review only by this court, and the jurisprudence is to the effect that anyone asserting an abuse of that discretion has the burden of establishing it.” State v. Faciane, 233 La. 1028, 99 So.2d 333, 341. In the instant case, the defendant did not bear his burden of establishing to the satisfaction of the trial court that he was incapable of understanding the proceedings and the charge preferred against him and of assisting counsel in his defense. The following statement from the case of State v. Riviere, 225 La. 114, 72 So.2d 316, 317, is applicable here:
“The law presumes that every man is sane. State v. Seminary, 165 La. 67, 115 So. 370, State v. Toon, 172 La. 631, 135 So. 7. And to warrant the sustaining of a plea of present insanity, thereby preventing trial of a criminal action, it must appear by a preponderance of evidence that the accused is so mentally deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in the conducting of his defense in a rational manner. * * * That this accused is thus incapacitated is not made to appear by any of the evidence adduced— * * * Rather, there is a substantial disclosure to the contrary. We are unable to conclude, consequently, that the judge erred in declaring him presently sane.”
Bill of Exceptions No. 5 is without merit.
Bills of Exceptions Nos. 6, 7, 8, 9, 14, 15 and 16, will be discussed together.
Counsel for the defendant challenged for cause the prospective jurors, Vardaman Walker, George D. Berne, Ralph Lewis, J. C. Conerly, Aurelius W. Bennett, and Roy Carter. The trial court overruled the challenges and ruled the prospective ‘jurors competent. Bills of Exceptions Nos. 6, 7, 8, 9, 14, 15, and 16, were reserved to the rulings of the trial judge. , 'J .. ..
*1112 LSA-R.S. 15:351 sets forth that:
“The special causes for which a jur- or may be challenged are:
“(1) That he is not impartial, the cause of his bias being immaterial; but an opinion as to guilt or innocence of the accused, which is not fixed, or has not been deliberately formed, or that would yield to evidence, or that could be changed, does not disqualify the juror; * * *”
LSA-R.S. 15:353 states:
“No defendant can complain of any ruling sustaining or refusing to sustain a challenge for cause, unless his peremptory challenges shall have been exhausted before the completion of the panel; moreover, the erroneous allowance of challenges for cause affords the defendant no ground of complaint, unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an obnoxious juror.”
LSA-R.S. 15:354 provides:
“In all trials for anyjcrime punishable with death, * * * each defendant shall be entitled to challenge peremptorily twelve jurors, * * * ”
“The purpose of allowing challenges for cause is to secure a fair and impartial trial and the right exists independent of any statutory provision since it is an incident of the trial by jury. The Legislature, in adopting those provisions of the Code of Criminal Procedure treating of that subject, merely codified the law in existence at the time of the adoption of the Code as a means of readily securing to the accused a fair and impartial trial by jury, as guaranteed by the Constitution. Hence the rule, universally obtaining, that the defendant has the right to have jurors examined as to their qualifications for the purpose of showing grounds for challenge for cause, and also, within reasonable limits, to elicit such facts as will enable him intelligently to exercise his right of peremptory challenge, and it is error for the court to exclude questions which are pertinent for either purpose * * *
“We agree with the statement of counsel for the State that the question of a juror’s qualification is addressed to the sound discretion of the trial judge. His ruling is, however, subject to review; and while it will be sustained unless the discretion allowed him is shown to have been unwisely exercised, nevertheless considerable latitude must of necessity be allowed in the examination of jurors and the trial judge is without right to unduly curtail that examination.” State v. Brazile, 229 La. 600, 86 So.2d 208, 210.
*1114 “No judgment' shall be set aside, or a new trial granted by any appellate court of this state, in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.” LSA-R.S. 15:-557.
We shall determine the correctness of the trial judge’s rulings as to the competency and eligibility of the prospective jurors, supra, in the light of the above statutes and jurisprudence.
The prospective juror Vardaman Walker was asked, “Do you have a fixed opinion in this case at the present time?” He replied, “I do not.” He was then questioned, “Not even that the defendant is innocent?” To this he responded, “I do not because I have not heard any evidence. All I know is what I read in the paper, I don’t know anything about the case.” This testimony was the subject of challenge for cause by counsel'for the defendant.
We do not find that the trial judge was in error in overruling the challenge. The gist of Walker’s testimony is that he had no fixed opinion in the case because he had not heard the evidence.
George D. Berne,[4] a prospective juror, on voir dire examination testified as follows:
“Q. Would you hold it against the defendant if he didn’t rebut the testimony? A. Yes.”
The trial court instructed the prospective juror that under our law a defendant is not required to take the stand in his own behalf, or put on any evidence whatever, and that the State must prove beyond a reasonable doubt that the defendant is guilty before the jury can find him guilty. The trial judge asked the prospective juror if he would follow the instruction, and he replied in the affirmative. It then asked him, “And have no prejudice against him that he didn’t rebut the State’s' evidence?” He replied, “No I wouldn’t.”
The trial court refused to excuse the juror, and counsel for the defendant reserved a bill of exceptions.
We do not believe that the trial judge abused her discretion. The above testi *1116 mony ' implies ' that Berne did not understand the import of the first question propounded to him. At the time the bill of exceptions was reserved, Berne had just stated that he would have no prejudice against the defendant because he didn’t rer but the State’s evidence. At that moment, the prospective juror had evidenced no partiality. ' ' '
The prospective juror Ralph Lewis [5] was examined on voir dire as follows :
“Q. You stated you had an opinion and that it would yield to evidence, and
I asked you if the. type of evidence necessary, to cause that opinion to yield would necessarily be evidence of the innocence of this' defendant? A. The way I see it, everybody is innocent until proven guilty.
“Q. 'Could you answer the question yes or no? A. I hate to answer it, and I don’t understand, I am sorry.
“Q. Would you require any proof of innocence of this defendant in order for you to change your opinion? A. Yes.
“Mr. Covington: I submit the juror for cause.”
The trial court then instructed the prospective juror; after the instruction Lewis answered affirmatively when questioned as to whether he would require the State to prove to his satisfaction that the defendant was guilty beyond a reasonable doubt before he would convict him. The trial court held ' the juror competent; counsel for the defendant was not satisfied with the answer and reserved a bill of exceptions.
We do not find that the trial judge abused her discretion in ruling Lewis competent. The gist of his testimony is that his opinion would yield to evidence.
The prospective juror J. C. Conerly testified that he did not have an opinion that the defendant was innocent. Counsel for the defendant challenged and reserved a bill of exceptions. The trial court then excused the juror.
On examination, the prospective juror Aurelius Bennett testified to the effect that he thought that the defendant must prove himself innocent. The trial judge instructed the prospective juror as to the law; being satisfied that Bennett understood and accepted the law, she ruled him eligible. A bill of exceptions was reserved; the trial judge later excused the juror.
Two challenges for cause were entered by counsel for the defendant on the voir dire of the prospective juror Roy *1118 Carter. The examination of this prospective juror recites:
“By Mr. Covington: If this defendant elected to testify would you because of the difference in races give more weight to the testimony of * * * [the victim] than to the testimony of the defendant? A. Well, now * * *.
“The Court: Merely on the question of race would you believe the testimony of one person more than the other? A. No ma’m.
“The Court: The Court rules he is competent.
“By Mr. Covington: To which ruling of the Court counsel for defense objects and reserves a formal bill of exceptions making the objection of the defendant the ruling of the Court, the questions and answers, the interrogation of the Court and further answers a part of the formal bill.
“By Mr. Covington: Mr. Carter, it seems that your answer to the questions were contradictory, isn’t it true, Mr. Carter, that solely because of the races you would be more likely to believe the testimony of a white woman than that of a colored man? A. I don’t think so.
“Q. You thiiik you would be fair to both sides? A. Right.
“Q. You stated that you had no conscientious scruples against capital punishment? A. No sir.
“Q. Now, I ask you any scruples about returning a qualified verdict of guilt without capital punishment ? (The witness hesitates.)
“The Court: The Court charges you can bring in a verdict of guilty as charged, or a qualified verdict of guilty without capital punishment do you have any conscientious scruples about returning a qualified verdict of guilty without capital punishment ? A. Right.
“The Court: The Court rules the juror is competent.
“Mr. Covington: To which ruling of the Court counsel for defense objects and reserves a formal bill of exceptions making the questions, the answers adduced, the objection and the ruling of the Court part of the formal bill.” [6]
A review of the testimony given by Roy Carter[7] on examination when considered as a whole convinces us that the prospective juror was impartial. The word *1120 “Right” in answer to the question propounded, supra, indicates to us that he understood that he could bring in a qualified verdict of guilty without capital punishment and that he had no conscientious scruples about returning such qualified verdict. Carter used the word “Right” when asked if he thought he could be fair to both sides. We consider such use a mannerism. The trial judge did not commit prejudicial error nor did she abuse her discretion in ruling him eligible.
Counsel for defendant contends that by reason of the trial court’s rulings, all of defendant’s peremptory challenges were exhausted, and that defendant was compelled to accept jurors who were unfavorable to defendant.
Nowhere in the record do we find any evidence to the effect that the defendant was forced to accept an obnoxious juror. LSÁ-R.S. 15:353. Nowhere in the record do we find that by exhausting his peremptory challenges the defendant was prejudiced. The motion for a new trial—which shall be discussed later in this opinion—insofar as it relates to Bills of Exceptions Nos. 6, 7, 8, 9, 14, 15, and 16, advances only the arguments which were raised in the bills and have been hereinabove discussed., “In the absence of any showing whatsoever that any occasion arose in the trial of the case after the exhaustion of the per-' emptory challenges where the defendant needed a peremptory challenge or would have used it against any of the remaining jurors of the panel, it does not appear that he was prejudiced in any substantial right or that the ruling of the trial judge constituted a substantial violation of a constitutional or statutory right.” State v. Breedlove, 199 La. 965, 7 So.2d 221, 249.
Bills of Exceptions Nos. 6, 7, 8, 9, 14, 15, and 16, are without merit.
Bills of Exceptions Nos. 10 and 11 were reserved to the trial judge’s overruling defendant’s motions for a mistrial.
The prospective juror Hulon O. Adams [8] was asked by the district attorney whether he had formed an opinion in the case. He responded, “Yes, from what I read in the paper he admitted it.” Counsel for the defendant moved for a mistrial' based upon the above statement, and the district attorney asked that the jury be instructed to disregard the statement. The trial court gave the following instructions, after which counsel for the defendant reserved a bill of exceptions.
“If you heard him say anything about what his opinion is, I am addressing these remarks to the Jury— if you understood anything this wit *1122 ness said concerning his opinion, or if he stated what his opinion was, utterly disregard it. The Court is of the opinion he did not so state.”
We do not find that the unsolicited statement of Adams was of such a nature as to warrant the granting of a mistrial. The district attorney was not responsible for the statement, and the trial court instructed the jury to disregard it. The trial judge did not abuse her discretion; her ruling was correct. See, State v. Rugero, 117 La. 1040, 42 So. 495; State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Goins, 232 La. 238, 94 So.2d 244; State v. Kelly, 237 La. 956, 112 So.2d 674.
The prospective juror Victor Sciortino was asked by the district attorney whether he had formed any opinion as to the guilt or innocence of the defendant. He said that he thought the defendant was guilty. Counsel for defendant then moved for a mistrial based upon the statement of Sciortino in the presence of the jury. The Court thereupon addressed the jury:
“The Court: Instructs the Jury to disregard any opinion expressed by anybody in their presence or the words of this juror regarding his opinion. The Court also instructs that the jurors are absolutely to disregard anything that has been said by this witness concerning his opinion as to the guilt or innocence of the accused.
“The Court overrules the motion of defense counsel.”
Counsel for defendant reserved a bill of exceptions, and the court ruled that the instructions to the jury be made part of the bill.
We do not find that the defendant was. prejudiced by the ruling of the trial judge, in view of her instruction, supra.[9]
Sciortino was again asked (the record does not disclose by whom) :
“Q. Have you formed any opinion as to the guilt or innocence of the defendant? A. Yes, I think he is guilty.”
Whereupon, the court again stated:
“The Court: Further instructs this juror who is under interrogation now, and also instructs every other prospective juror in this Court room if you are called and are asked the question as to. whether or not you have formed an opinion answer ‘yes’ or ‘no’ but under no circumstances state what your opinion is.”
Bills of Exceptions Nos. 10 and 11 are without merit.
Bill of Exceptions No. 12 was reserved to the ruling of the trial court ex *1124 cusing Elijah Plummer, a colored prospective juror, because the sheriff had obtained only domiciliary service upon him.
This bill is without merit.
“The law is well settled that a defendant has no right to a trial by any particular jury or jurors, but has the right only to a trial by a competent and impartial jury. State v. Ramoin, 160 La. 850, 107 So. 597, and authorities therein cited.’' State v. McLean, 211 La. 413, 30 So.2d 187, 190.
“ * * * In the impaneling of a petit jury, the defendant’s right is one of rejection rather than of selection. * * * ” State v. Foster, 164 La. 813, 114 So. 696, 701.
Bills of Exceptions Nos. 17 and 18 were reserved to the rulings of the trial court which, over the objection made by defendant, allowed the introduction into evidence of clothing worn by both the victim and the defendant at the time of the commission of the alleged offense. Counsel for the defendant objected to the introduction of the evidence because there was no showing of the chain of'possession and custody of the clothing from the date of receipt by Deputy Sheriff Vincent L. Risponi until October 6, 1959, when the garments were taken to the Louisiana State Police Crime Laboratory in Baton Rouge, Louisiana.
The testimony attached to and made part of the bills of exceptions reflects that certain deputies of the Tangipahoa Parish Sheriff’s Office went to the victim’s home on September 30, 1959. They obtained from her the clothing she was wearing at the time the alleged crime was committed; the clothing was brought to the sheriff’s office and turned over to Deputy Risponi, who packaged and marked it for identification. Deputy Sheriff Hulin Simmons, one of the deputies who went to the victim’s home on September 30, 1959, identified the clothes as those which the victim had given to him. During trial Deputy Risponi identified the clothes as those of the victim. Deputy Mervin Falcon testified that the clothes were turned over to him by Deputy Risponi and that he placed them in a locker to which he had the only key. The clothes were kept in the locker until handed to Deputy Risponi for transportation to Baton Rouge. Deputy Risponi testified that he brought the victim’s clothes to the Louisiana State Police Crime Laboratory in Baton Rouge, Louisiana. Mr. John Joseph Koch, Jr., Criminologist for the Louisiana State Police Crime Laboratory, identified the victim’s clothing and stated that it had been in his possession from the time of delivery by Deputy Risponi until the time of trial.
The clothes which the defendant was wearing when apprehended were removed from his person by deputies. During the interval between the commission of the alleged crime and apprehension, the defendant changed some of his top clothes; the *1126 removed garments were bundled and left in a briar patch. The location of the bundle was pointed out to the Sheriff’s deputies by the defendant; they found it after search, and Deputy Risponi kept it in his possession until delivery to the crime laboratory. Defendant left his boots in the victim’s barn; they were discovered by a deputy and turned over to Deputy Risponi. Prior to the commission of the alleged crime, defendant had cut the tops of his shoes. These parts of the shoes were found in a garbage can outside of the defendant’s mother’s house. All of the aforementioned clothing was delivered to the Louisiana State Police Crime Laboratory in Baton Rouge, Louisiana. The clothing was identified by the sheriff’s deputies and by Mr. John Joseph Koch, Jr., Criminologist for the Louisiana State Police Crime Laboratory in Baton Rouge. Mr. Koch testified that the clothing remained.in his possession from the time of delivery by Deputy Risponi until the time of trial.
Deputy Vincent L. Risponi affirmatively testified that either he or other sheriff’s deputies had custody of the victim’s clothing and the defendant’s clothing, which was introduced in evidence, from the time of location and discovery until the 'time of departure for the crime laboratory in Baton Rouge; that he maintained continuous possession . of the evidence from the time of departure for Baton Rouge until the time of delivery to Mr. Koch in Baton Rouge.
During trial there was no contradiction of the identity of the evidence nor of the above testimony. We find that the State has affirmatively proved the continuity of its possession of the clothing worn by the victim and the defendant at the time of the commission of the alleged offense. Bills of Exceptions Nos. 17 and 18 are, therefore, without merit.
Bill of Exceptions No. 19 was reserved to the overruling of defendant’s objection to the trial court’s ruling that Mr. John Joseph Koch, Jr. was an expert in the field of criminology.
Mr. Koch testified that he received a B. S. degree in biology and a minor in chemistry from Loyola University of the South at New Orleans, Louisiana, in 1951. He stated that from 1951 until June, 1955, he was employed as a toxicological chemist with the Coroner of Orleans Parish; that in June, 1955, he became associated with the Louisiana State Police Crime Laboratory at Baton Rouge. In his position as criminologist, he personally analyzed all types of evidence, which included the analysis of stains to determine whether or not they were blood; whether they were human blood and to which group they belonged; also semenal fluid, to determine whether or not it was from a non-secreter or from a
*1128 person from Group “O”.[10] His testimony is uncontradicted.
We find neither error nor abuse of discretion in the ruling of the trial judge as to the competency of Mr. Koch in the field of criminology.
“ * * * It is well settled that the trial judge determines whether witnesses offered as experts are entitled to be heard in that capacity, and his ruling will not be disturbed on appeal where no error appears. Art. 466, La. Code Cr.Proc., R.S. 15:466; State v. Carter, 217 La. 547, 46 So.2d 897; State v. Nicolosi, 228 La. 65, 81 So.2d 771." State v. Mills, 229 La. 758, 86 So.2d 895, 899. See, State v. Compagno, 230 La. 657, 89 So.2d 158; State v. Di Vincenti, 232 La. 13, 93 So.2d 676.
Bill of Exceptions No. 19 is without merit.
Bill of Exceptions No. 20 was reserved to the overruling of defendant’s motion for a mistrial based on the ground that the district attorney handed shoes allegedly worn by the defendant to the jury without having had the shoes previously admitted into evidence.
The record reflects that the State questioned Mr. John Joseph Koch, Jr., Criminologist for the Louisiana State Police Crime Laboratory in Baton Rouge, as to his examination of the physical evidence; he was asked to identify the clothing, which was the subject matter of Bills of Exceptions Nos. 17 and 18. Mr. Koch was then asked if he made any examination of defendant’s shoes with reference to the leather tops. He replied:
“ * * * The basis for that examination is merely the actual physical matching of the serrated knife marks on the tops and placed against the shoes. * * * In addition to the cut marks my microscopic examination revealed splotches of paint on the top that are similar to splotches on the shoe itself.”
Objection to the above testimony was made by counsel for the defendant on the ground that he did not remember “its being introduced by the State—this particular evidence.” The trial court ruled that the objection was premature. Counsel moved for a mistrial, and the court overruled the objection; whereupon, the instant bill was reserved.
The trial judge was correct in her ruling. The witness had not completed his testimony, either as to description or identification. Before cross-examination of Mr. Koch, the State formally introduced and filed in evidence the alleged boots and tops *1130 thereof of defendant. No objection was made by counsel for the defendant. The defendant suffered no prejudice.
Bill of Exceptions No. 20 is without merit.
Bill of Exceptions No. 24, which will be discussed prior to the remaining bills and in connection with Bills of Exceptions Nos. 21 and 22, was reserved to the ruling of the trial court, over the objection of counsel for the defendant, that an alleged oral statement of the defendant, allegedly made while he was in transit to the jail and testified to by Deputy Hulin Simmons and Deputy Dennis Rottman, was a free and voluntary statement.
Deputy Hulin Simmons testified that he, Deputy Dennis Rottman, and Sheriff Duncan Bridges, arrested the defendant on October 2, 1959. The defendant was handcuffed and placed in an automobile for transportation to Amite, Louisiana. After the jury retired, Deputy Simmons testified that while on the way to Amite, Louisiana, the defendant, without inducements, promises, or anything of that sort, freely and voluntarily made the statement that he attacked the victim. The deputy said that the defendant was confronted with “a few little things” before he made the statement. The officer stated that the defendant was told that the authorities had his shoes and picture, and that he, the defendant, had been identified by the victim and by two men who saw him. :
Deputy Dennis Rottman affirmatively testified that he did not strike the defendant. He said that the defendant and the sheriff rode in the back seat of the automobile. He testified that the statement of the defendant was given voluntarily, and Rottman corroborated the testimony of Simmons.
We find no error in the ruling of the trial judge that the defendant’s oral statement was made freely and voluntarily. The testimony elicited from the two deputies, supra, to that effect is convincing and uncontradicted.
Bill of Exceptions No. 21 was reserved to the overruling of defendant’s objection to the ruling of the trial court that “the statement” obtained from the defendant was procured without any threats, duress, fear, or hope of reward.
Bill of Exceptions No. 22 was reserved to the overruling of defendant’s objection to the introduction into evidence of a written statement allegedly made by the defendant on the basis that it had not been proved to be the statement of the defendant, nor had it been proved beyond a reasonable doubt that it was freely and voluntarily given.
“ * * * Our law provides that, before any confession can be introduced in evidence, the State must affirmative *1132 ly prove that it was freely and voluntarily given and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. Articles 451 and 452, Code of Criminal Procedure (R.S. 15:451, 452) and Section-11 of Article 1 of the Constitution of 1921. And it is established by our jurisprudence that, before what purports to be a confession can be received in evidence, it must be shown by proof which convinces beyond a reasonable doubt that it is voluntary. State v. Wilson, 214 La. 317, 37 So.2d 804; State v. Robinson, 215 La. 974, 41 So.2d 848; State v. Honeycutt, 216 La. 610, 44 So.2d 313; State v. Green, 221 La. 713, 60 So.2d 208 and State v. Michel, 225 La. 1040, 74 So.2d 207.” State v. Weston, 232 La. 766, 95 So.2d 305, 310. See, State v. Savell, 238 La. 758, 116 So.2d 513; State v. Stewart, 238 La. 1036, 117 So.2d 583.
Mrs. Corinné Watson, deputy sheriff and stenographer, Tangipahoa Parish, testified that after the defendant was brought into jail she was called to take a statement from him. She said that she wrote the statement in shorthand—word for word— as the defendant dictated it. After taking the dictation, she went downstairs and transcribed the statement. She returned to the upstairs' jail quarters (radio robm) with the typewritten statement. Deputy Ty Cobb Lanier read the statement (of which the defendant had a copy) aloud tó the defendant; each page was signed by the defendant at the completion of its reading. The entire confession was signed by the defendant and witnessed by Ty Cobb Lanier and James W. McKnight, the latter having been intermittently in the radio room during the reading. Mrs. Watson affirmatively and without contradiction testified that the statement was freely and voluntarily given by the defendant. She said that there were no threats nor coercion; there were no promises nor offers of reward given to him.
Deputy Ty Cobb Lanier testified that on October 2, 1959, after the defendant was brought to jail but before he left the automobile in which he was held as a prisoner, the accused told him that he wanted to make a statement. Deputy Lanier corroborated without contradiction the testimony of Mrs. Watson. He said that he asked the defendant a few questions; he stated that the only assistance given to the defendant was in the identification of exhibits. He said that the defendant offered no objection to the statement as it was read to him; Deputy Lanier said that he saw the defendant sign the statement, and that there was no force or threats exercised on him. :
We find that the defendant’s statement was free and voluntary and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or *1134 promises. LSA-R.S: 15:451.' The defendant was not subjected to any treatment designed by effect on body or mind to compel a confession of crime. LSA-R.S. 15:452. These findings are affirmed by the uncontradicted testimony of record.
Bills of Exceptions Nos. 21, 22, and 24, are without merit.
Bill of Exceptions No. 23 was reserved to the overruling of defendant’s objection to the introduction in evidence by the State of a length of pipe, said objection being predicated on the ground that the evidence was inflammatory and designed to prejudice the defendant in the minds of the jury.
The written statement given by the defendant, which we have hereinbefore found to have been properly admitted in evidence because it was voluntarily given without force or duress, states:
“ * * * I looked around for something to hit her with. I thought about my shirt but I had left it at the front of the barn. I was going to put the shirt around her mouth. Then I saw this piece of pipe. This piece of pipe is being marked in my presence with three X’s by a pocketknife by Dy Rispone. I picked it up, turned her loose and swung the pipe at her and though I hit her on the shoulder or around the back. I must have hit her twice. She fell on the first lick and then I hit her again she never did hush hollering. * * * »
Since the defendant admitted in his written statement that he hit the victim after the commission of the crime alleged 'to have been committed by him, we do not find that he was prejudiced by the admission of the instrument in evidence. The trial judge did not commit reversible error.
Bill of Exceptions No. 23 is without merit.
Bill of Exceptions No. 25 was reserved to the trial court’s overruling defendant’s motion for a new trial.
The motion for a new trial' was based upon the averred fact that the trial judge and the district attorney committed many errors to the prejudice of the defendant, as set forth in Bills of Exceptions Nos. 1 through 24, inclusive.
We have discussed in this opinion all of the enumerated bills (with the exception of Bill of Exceptions No. 4, which was abandoned). We found no error of law in the rulings of the trial judge; we concluded that the defendant was not prejudiced by the rulings; we also concluded that there had been no miscarriage of justice as would prejudice the substantial rights of the defendant or violate his constitutional or statutory rights. LSA-R.S. 15:557. The above averment presents nothing new for oúr consideration; it is, therefore, without' merit.
*1136 In his motion for a new trial, defendant further averred that the verdict of the jury in finding the defendant guilty of aggravated rape was contrary to the law and the evidence because, first, the defendant was legally insane at the time of the alleged commission of the offense, and, second, the evidence disclosed that the force which would have made the crime aggravated, had it been used by. the defendant upon the victim prior to the actual act of intercourse, was in fact not used until after intercourse had begun and, accordingly, while defendant might have been legally convicted of simple rape, the verdict of “guilty as charged” to an indictment charging aggravated rape was contrary to the law and the evidence. :
The contention that the defendant was legally insane at the time of the commission of the alleged crime was the subject matter of Bill of Exceptions No. 5. We found no error in the ruling of the trial judge that the defendant was capable of understanding the nature of the offense with which he was charged and assisting in his defense. .After this ruling, counsel for the defendant made no further effort in the trial court to.prove the averred insanity of the defendant at the time of the commission of the alleged crime.
“ * * * Finally, counsel overlook the fact that having- urged insanity at the time of the commission of the offense as a defense, they must bear the burden of establishing this fact by a preponderance of the evidence for the benefit of the jury inasmuch as the law presumes that a person is sane. * * * ” State v. Chinn, 229 La. 984, 87 So.2d 315, 324.
Since counsel for the defendant did not bear the burden set out in the above jurisprudence, we find no merit in the contention that the defendant was legally insane-at the time of the commission of the alleged' crime.
With respect to defendant’s contention that the evidence did not prove that' the crime with which he was charged was; aggravated, it is to be noted that his written, statement, discussed, supra, recites:
“ * * * I threw her down on the floor of the barn and she told me to go-ahead and kill her because that was-what she knew I was going to do. F told her I wasn’t going to kill her,, then she got up and I grabbed her by the arm and pulled her back to the back of the barn where you go to the-hay.' And I asked her would she give-me some, she said no I started twisting her arm and she went down to the-floor, I was holding her with my left-arm by her right arm around her wrist.- * * * I went ahead and intercoursed her. While we were having intercourse she started hollering and I *1138 reached down in my pants pocket and got my knife out. The only time I turned her loose was to open it and then I grabbed her again. * * * ”
LSA-R.S. 14:42 provides:
“Aggravated rape is a rape committed where the sexual intercourse is •deemed to be without the lawful con•sent of the female because it is committed under any one or more of the following circumstances:
“(1) Where the female resists the ■■act to the utmost but her resistance is ■overcome by force.
“(2) Where she is prevented from resisting the act by threats of great •and immediate bodily harm, accompanied by apparent power of execution.”
We find that the defendant’s statement ■sets forth facts; that the statement was ■properly admitted in evidence and the facts therein contained were weighed and considered by the jury in arriving at its ver- • dict. The trial judge properly instructed the jury that it could return a verdict of simple rape. The appellate jurisdiction of this Court cannot be invoked to review the refusal to grant a new trial except for error of law. LSA-R.S. 15:516.
Bill of Exceptions No. 25 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.

. The trial judge did not write per curiaras to any of the bills of exceptions.

. LSA-R.S. 15:267: “If before or during the trial the court has reasonable ground to believe that the defendant against 'whom an indictment has been found * * * is insane or mentally defective to the extent that the defendant is unable to understand the proceedings against him or to assist in his defense, the court shall immediately fix a time for a hearing to determine the defendant’s mental condition. The court may appoint two disinterested physicians to examine the defendant with regard to his present mental condition and to testify at the hearing. Other evidence regarding the defendant’s mental condition may be introduced at the hearing by either party.
“If the court, after the hearing, decides that the defendant is able to understand the proceedings and to assist in his defense, it shall proceed with the trial. If, however, it decides that the defendant through insanity or mental deficiency is not able to understand the proceedings or to assist in his defense, it shall take proper steps to have the defendant committed to the proper institution. * * ”
*1108 LSA-B..S. 15:268: “Whenever, on a prosecution by indictment or information, the existence of insanity or mental defect on the part of the defendant at the time of the alleged commission of the offense charged becomes an issue in the cause, the court may appoint one or more disinterested physicians not exceeding three to examine the defendant. If the court •does so make such appointments, the •clerk shall notify the prosecuting attorney and counsel for the defendant of the .appointments and shall give the names and addresses of the physicians so appointed. If the defendant is at large on hail, the court in its discretion may commit him to custody pending the examination by the coroner and physician. The appointment by the court shall not preclude the state or defendant from calling expert witnesses to testify at the trial, and in case the defendant is committed to custody by the court, they shall be permitted to have free access to the defendant for purposes of examination or observation. The physicians appointed by the court shall be summoned to testify at the trial and shall be examined by the court and may be examined by counsel for the state and the defendant.”

. The motion suggested that due to the seriousness of the crime the District Attorney desired to have defendant examined.

. George D. Berne did not serve on the jury, He was excused by the trial judge during later questioning.

. Ralph Lewis did not serve on the petit jury in this prosecution.

. A juror’s opinion with respect to capital punishment is not listed among the causes for challenge by the defendant. See, LSA-R.S. 15:351 and 352.

. Roy Carter did not serve on the petit jury.

. Hulon O. Aclaras did not serve on thepetit jury. He was later excused because he stated that he did not believe in capital punishment for the type of crime with which the defendant was charged.

. Victor Sciortino did not serve on the' jury panel.

. This type of knowledge was necessary as part of the proof in a case of the instant nature.